820 F.2d 46
 RICO Bus.Disp.Guide 6643
 Hubert Park BECK, Dorothy Fahs Beck, Robert J. Beck and Otto
Weinmann, Plaintiffs-Appellants,
v.
MANUFACTURERS HANOVER TRUST COMPANY; Milbank, Tweed, Hadley
& McCloy; Kelley Drye & Warren; Donald B.
Herterich; Isaac Shapiro; and Edward
Roberts, III, Defendants-Appellees.
 No. 922, Docket 86-7927.
 United States Court of Appeals,
Second Circuit.
 Argued March 11, 1987.
Decided June 1, 1987.
 
 Stuart Hecker, New York City, for plaintiffs-appellants.
 Adlai S. Hardin, Jr., New York City (Milbank, Tweed, Hadley & McCloy, Kelley, Drye & Warren, New York City, on the brief), for defendants-appellees.
 Before MESKILL and NEWMAN, Circuit Judges, and METZNER, District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal raises the recurring question whether a complaint adequately pled a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68 (1982 & Supp.III 1985). Plaintiffs appeal from a judgment of the District Court for the Southern District of New York (Robert W. Sweet, Judge) dismissing their complaint alleging civil RICO violations by Manufacturers Hanover Trust Co. and other defendants. The complaint was dismissed for failure to plead adequately the scienter element of the alleged predicate acts of mail fraud, 18 U.S.C. Sec. 1341 (1982), and wire fraud, 18 U.S.C. Sec. 1343 (1982), and, in the alternative, for failure to plead the "pattern" requirement of RICO, 18 U.S.C. Secs. 1961(5), 1962(c). 645 F.Supp. 675 (S.D.N.Y.1986); 650 F.Supp. 48 (S.D.N.Y.1986). Because we conclude that the amended complaint does not adequately plead the "enterprise" element of RICO, 18 U.S.C. Secs. 1961(4), 1962(c), we affirm the judgment of the District Court.
 
 Background
 
 2
 The circumstances alleged in the amended complaint are complex. In 1902, National Railroad Company of Mexico ("National"), a Utah corporation, issued $23,000,000 principal amount of 4 1/2% Prior Lien Bonds ("Prior Lien Bonds") and $27,289,000 First Consolidated Mortgage Bonds ("Consolidated Mortgage Bonds"). As security for the bonds, National pledged to the trustee certain of its railway properties ("U.S. collateral"). The Prior Lien Bonds represented a first mortgage against the U.S. collateral and certain collateral in Mexico; the Consolidated Mortgage Bonds were subordinated to the Prior Lien Bonds. Article Four, Section Five of the Prior Lien Trust Indenture states that
 
 
 3
 the holders of seventy-five (75) per cent. in amount of the prior lien bonds outstanding from time to time, shall have the right to direct and to control the method and place of conducting any and all proceedings for any sale of the premises hereby conveyed, mortgaged or pledged, or for the foreclosure of this indenture....
 
 
 4
 Plaintiffs Hubert Park Beck, Dorothy Fahs Beck, Robert J. Beck, and Otto Weinmann hold $1,500 principal amount of Prior Lien Bonds and $153,500 of Consolidated Mortgage Bonds. Manufacturers Hanover Trust Company ("MHT"), defendant, is the successor trustee for both series of bonds. The other defendants are Donald B. Herterich, a senior vice-president of MHT; Kelley Drye & Warren ("Kelley Drye"), counsel to MHT; Edward Roberts III, a Kelley Drye partner; Milbank, Tweed, Hadley & McCloy ("Milbank"), counsel to Mexico; and Isaac Shapiro, a Milbank partner at the time of the events alleged.
 
 
 5
 In 1908, Ferrocarriles Nacionales de Mexico ("Ferrocarriles"), a publicly owned Mexican corporation which owns and operates Mexico's railroads, took over National. Through this transaction, Ferrocarriles assumed all of National's liabilities and ownership of National's property, including the U.S. collateral securing the bonds.
 
 
 6
 National defaulted on interest payments on the bonds in 1914. In 1942, Mexico issued a decree ("the Registration Decree") requiring holders of certain Mexican securities, including the Prior Lien Bonds and Consolidated Mortgage Bonds, to register their bonds to establish non-enemy ownership. In 1951, Mexico promulgated the "Law on the Fate of Enemy Bonds" under which Mexico acquired ownership of all unregistered bonds.
 
 
 7
 Approximately 96% of the issued and outstanding Prior Lien and Consolidated Mortgage Bonds were registered under the Registration Decree. Plaintiffs' bonds were never registered. Pursuant to a 1946 Debt Readjustment Agreement with the International Committee of Bankers on Mexico and through open market purchases from bondholders, Mexico had by November 1982 acquired all Prior Lien and Consolidated Mortgage Bonds registered under the Registration Decree. Plaintiffs allege that bonds redeemed by Mexico pursuant to the Debt Readjustment Agreement were to have been retired by January 1, 1975.
 
 
 8
 Between 1942 and 1981, MHT, as indenture trustee, made numerous distributions of accrued and unpaid interest to holders of Prior Lien Bonds. Despite the Law on the Fate of Enemy Bonds, MHT treated the holders of unregistered bonds as legal owners of the bonds entitled to receive distributions. In addition, MHT treated Mexico as the owner of the approximately 96% of the bonds it had acquired, notwithstanding plaintiffs' objections that Mexico was not entitled to receive distributions as a bondholder in view of the Debt Readjustment Agreement.
 
 
 9
 Mexico, acting pursuant to Article Four, Section Five of the Prior Lien Trust Indenture, instructed MHT to foreclose the Prior Lien Mortgage and to sell the U.S. collateral at a public auction on November 2, 1982. Following appraisal of the U.S. collateral, an upset price of $31 million was determined. The public auction and the upset price were publicized in a notice of sale dated August 10, 1982. At the auction, Mexrail, Inc., the sole bidder, purchased the U.S. collateral for the upset price. The sale was consummated on November 29, 1982. In December 1982, MHT published and mailed to known bondholders a notice stating that it would distribute $1,355 of accrued and unpaid interest from the proceeds of the sale of U.S. collateral on each $1,000 Prior Lien Bond presented.
 
 
 10
 In March 1983, plaintiffs instituted an action in Supreme Court, New York County, alleging that MHT breached its fiduciary responsibilities in its administration of the indenture trust. Beck v. Manufacturers Hanover Trust Co., 125 Misc.2d 771, 481 N.Y.S.2d 211 ("Beck I"). Plaintiffs later instituted a second lawsuit in New York alleging that MHT breached its fiduciary responsibilities in the conduct of its defense in Beck I. Beck v. Manufacturers Hanover Trust Co., No. 15145/85.
 
 
 11
 In November 1985, plaintiffs brought a civil RICO action against defendants in the District Court for the Southern District of New York alleging wrongdoing in connection with the interest payments to Mexico between 1942 and 1981, the sale of U.S. collateral, and the disposition of the proceeds of that sale. The amended complaint alleges a three-phase conspiracy. During Phase I, defendants allegedly defrauded non-assenting bondholders by paying interest to Mexico in violation of the Debt Readjustment Agreement. During Phase II, defendants allegedly defrauded non-assenting bondholders by depriving them of substantially the entire value of the U.S. collateral by selling it at an artificially low price and by treating Mexico as a bondholder entitled to approximately 96% of the proceeds of the sale. During Phase III, defendants allegedly defrauded the Government and people of Mexico by depriving them of their purported share of the proceeds of the sale of the U.S. collateral through the low sale price, the failure to disclose to the Government of Mexico that it was being defrauded by its nationals, and the acceptance by MHT of a fraudulently and legally ineffective assignment of approximately 96% of the Prior Lien Bonds from Mexrail, Inc. in substantial satisfaction of the sale price of the U.S. collateral.
 
 
 12
 Defendants moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) and for failure to adhere to the applicable statute of limitations. Judge Sweet granted defendants' motion to dismiss on the alternative grounds that plaintiffs had not adequately pled "racketeering activity" or a "pattern of racketeering activity" as required by RICO. 645 F.Supp. 675 (S.D.N.Y.1986). Judge Sweet later heard reargument but adhered to his prior ruling. 650 F.Supp. 48 (S.D.N.Y.1986).
 
 Discussion
 
 13
 The gravamen of plaintiffs' amended complaint is that defendants violated RICO through their involvement in the allegedly improper treatment of bonds held by Mexico and the sale and disposition of the proceeds of the U.S. collateral. One component of a viable claim for damages under RICO is a proper allegation that defendants committed two or more "predicate" acts, 18 U.S.C. Sec. 1961(1), constituting a "pattern of racketeering activity." 18 U.S.C. Secs. 1961(5), 1962, 1964(c). See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495-96, 105 S.Ct. 3275, 3285-86, 87 L.Ed.2d 346 (1985); Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Plaintiffs' amended complaint alleged multiple violations of the mail fraud statute, 18 U.S.C. Sec. 1341, and the wire fraud statute, 18 U.S.C. Sec. 1343, as the predicate acts committed by the defendants. The initial question on this appeal is whether the amended complaint pled the scienter element of these violations with sufficient detail to satisfy Fed.R.Civ.P. 9(b).
 
 1. Adequacy of Pleading Scienter
 
 14
 In general, the mail and wire fraud statutes require, inter alia, a showing of intentional fraud. See United States v. Von Barta, 635 F.2d 999, 1005 n. 14 (2d Cir.1980), cert. denied, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); Soper v. Simmons Int'l, Ltd., 632 F.Supp. 244, 250 (S.D.N.Y.1986). Although Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. Connecticut National Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987); Ross v. A.H. Robins Co., 607 F.2d 545, 558 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); Soper v. Simmons Int'l, Ltd., supra, 632 F.Supp. at 249. These factual allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent. See Connecticut National Bank v. Fluor Corp., supra, 808 F.2d at 962; Ross v. A.H. Robins Co., supra, 607 F.2d at 558.
 
 
 15
 A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so. See e.g., Goldman v. Belden, 754 F.2d 1059, 1070 (2d Cir.1985). Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, see United States v. Simon, 425 F.2d 796, 808-09 (2d Cir.1969), cert. denied, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); cf. Gibbons v. Udaras na Gaeltachta, 549 F.Supp. 1094, 1124 (S.D.N.Y.1982), though the strength of the circumstantial allegations must be correspondingly greater, cf. United States v. Simon, supra, 425 F.2d at 808-10.
 
 
 16
 The present case falls into the latter category of cases. Plaintiffs have not alleged any facts indicating motive on the part of defendants. They concede that defendants did not stand to gain financially from the allegedly fraudulent transactions. They base their allegations of scienter solely on the circumstances surrounding the interest payments to Mexico and the sale of the U.S. collateral.
 
 
 17
 Plaintiffs' amended complaint does not provide an adequate basis for the requisite inference of scienter with respect to Phase I of the alleged conspiracy. Throughout the period 1942 to 1981, MHT consistently adhered to a practice of paying interest to all holders of Prior Lien Bonds, including Mexico. These interest payments to Mexico were disclosed in MHT's notices of distribution. Plaintiffs failed to identify any circumstances related to these interest payments indicating an intent by the defendants to defraud the non-assenting bondholders. At most, plaintiffs have alleged that MHT breached its fiduciary duty by paying interest to Mexico after its bonds were to have been retired.
 
 
 18
 With respect to Phases II and III of the alleged conspiracy, however, plaintiffs have adequately pled scienter. Plaintiffs alleged two sets of unusual circumstances surrounding the sale of the U.S. collateral that give rise to a strong inference of scienter. The first set involves the manner in which the upset price for the U.S. collateral was determined. Plaintiffs alleged, with supporting documents, that the valuations underlying this determination were procured by the Mexican nationals who eventually purchased the collateral for the upset price. Plaintiffs also alleged facts indicating that the sale of the U.S. collateral was made in violation of the Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub.L. No. 94-435, 90 Stat. 1383, which requires prenotification of federal authorities regarding specified sales of assets, 15 U.S.C. Sec. 18a (1982 & Supp.III 1985). Plaintiffs' asserted reason for this violation was the Mexican nationals' need to consummate the sale prior to the change of Mexican administration on December 1, 1982. Defendants have not offered any alternate explanation for either of these sets of circumstances. These circumstances, read in the context of plaintiffs' other allegations, create, for purposes of testing the validity of a complaint, a strong inference that defendants consciously engaged in activities enabling the Mexican nationals to acquire the U.S. collateral at a fraudulently low price.
 
 
 19
 Consequently, we hold that the District Court erred in ruling that none of plaintiffs' allegations of mail and wire fraud adequately pled scienter. We affirm Judge Sweet's ruling that plaintiffs failed to allege scienter adequately with respect to Phase I but reverse his holding that the allegations of scienter with respect to Phases II and III were inadequate.
 
 
 20
 2. Adequacy of Pleading "Pattern of Racketeering Activity"
 
 
 21
 The District Court ruled, as an alternative ground for dismissal, that plaintiffs' amended complaint failed to plead adequately a "pattern of racketeering activity." Sharing a view expressed elsewhere, e.g., Superior Oil Co. v. Fulmer, 785 F.2d 252, 257 (8th Cir.1986), Judge Sweet interpreted footnote 14 of Sedima, S.P.R.L. v. Imrex Co., supra, 473 U.S. at 496, 105 S.Ct. at 3285, to impose a "multiple episodes" requirement upon the "pattern" element of RICO. See 645 F.Supp. at 683-85; 650 F.Supp. at 50. Applying this standard, Judge Sweet concluded that plaintiffs had failed to allege a RICO pattern.
 
 
 22
 On the day preceding issuance of Judge Sweet's final decision ordering dismissal, and apparently after his reconsideration, our Circuit decided United States v. Ianniello, 808 F.2d 184 (2d Cir.1986), which considers the effect of Sedima 's footnote 14 on our Circuit's interpretation of the "pattern" element of RICO. Judge Mahoney expressly rejected a multiple episodes requirement, id. at 190, 192 n. 15; he did, however, highlight that our Circuit has given effect to the factor of "continuity plus relationship" discussed in Sedima through our interpretation of the "enterprise" element of RICO, 18 U.S.C. Secs. 1961(4), 1962(c). Id. at 191.
 
 
 23
 It is clear after Ianniello that the District Court erred in interpreting "pattern of racketeering activity" to require multiple episodes. Ianniello confirms that two related predicate acts will suffice to establish a pattern under 18 U.S.C. Sec. 1961(5). Id. at 189-90. Plaintiffs' amended complaint pleads at least two related acts of mail and wire fraud with regard to the sale of the U.S. collateral and therefore satisfies the pleading requirement for "pattern of racketeering activity."
 
 
 24
 3. Adequacy of Pleading "Enterprise"
 
 
 25
 Focusing on the solace provided by Ianniello, defendants argue that the District Court's judgment should be affirmed on the ground that plaintiffs' amended complaint fails to allege adequately a RICO enterprise. Ianniello emphasizes that a plaintiff must prove the existence of a continuing enterprise under 18 U.S.C. Sec. 1962(c):
 
 
 26
 An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). This circuit requires that, under section 1962(c), the enterprise be a continuing operation and that the [predicate] acts be related to the common purpose.
 
 
 27
 Id. at 191 (emphasis added).
 
 
 28
 Defendants' contention is significantly strengthened by our holding above that plaintiffs have sustained their pleading burden with regard to only those predicate acts associated with the sale of the U.S. collateral. As Ianniello recognized, whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance. Id. at 191. A consequence of that observation for this case is that with the elimination of Phase I from consideration, the enterprise alleged by plaintiffs had but one straightforward, short-lived goal--the sale of the U.S. collateral at a reduced price. At the conclusion of the sale, the alleged enterprise ceased functioning. Cf. United States v. Ianniello, supra, 808 F.2d at 191-92 (noting that "[t]he common purpose in this case was to skim profits and had no obvious terminating goal or date" (emphasis added)). Such an association is not sufficiently continuing to constitute an "enterprise" under 18 U.S.C. Secs. 1961(4), 1962(c). Cf. Moss v. Morgan Stanley Inc., supra, 719 F.2d at 22; United States v. Mazzei, 700 F.2d 85, 89 (2d Cir.), cert. denied, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). For lack of an adequate allegation of a RICO enterprise, the complaint was vulnerable to dismissal.
 
 
 29
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation