**Elizabeth POHLOT, Plaintiff,**

v.

**Stephen A. POHLOT, Sr. and George Neustadt, Defendants.**

No. 85 Civ. 8598–CLB.

United States District Court, S.D. New York.

July 6, 1987.

John R. Bartels, Jr., White Plains, N.Y., for plaintiff.

Marjorie E. Korelitz, Robert S. Groban, Jr., Fink, Weinberger, Fredman, Berman & Lowell, P.C., White Plains, N.Y., for Pohlot.

Albert J. Gaynor, White Plains, N.Y., for Neustadt.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

Plaintiff Elizabeth Pohlot is the wife of defendant Stephen Pohlot. She brought this action on October 31, 1985, to recover damages arising out of her husband's attempt, in concert with co-defendant George Neustadt, to have her assassinated. Plaintiff invokes the subject matter jurisdiction of the federal court by alleging claims under the Racketeer Influenced and Corrupt Organization Act (Civil RICO), 18 U.S.C. § 1961, *et seq.* She also alleges a pendent claim arising under New York law. The action has been settled as to Neustadt. Both parties have moved for summary judgment, defendant's motion to dismiss the complaint having been converted to one for summary judgment as a result of presentation of matters outside the pleadings. *See* F.R.Civ.P. 12(b) and 56. Because, under recent Second Circuit case law, plaintiff has not alleged or substantiated injury to her business or property or the existence of a RICO enterprise, defendant is entitled to judgment.

*Statement of Facts*

In July 1985, plaintiff Elizabeth Pohlot commenced an action for divorce against defendant Pohlot in New York Supreme Court, Westchester County. On July 9,

1985, plaintiff obtained a temporary restraining order prohibiting Pohlot from selling or secreting his assets subject to equitable distribution. *See generally* N.Y. Domestic Relations Law § 236. Specifically, the contents of various safe deposit boxes, four automobiles, and the assets of Pohlot's pharmacy business were not to be disturbed in any manner. Apprehensive that his wife might be awarded a substantial portion of these assets incident to a divorce, Pohlot decided to have her murdered.

In August 1985, Pohlot solicited the help of his friend defendant Neustadt in hiring a professional assassin to murder plaintiff. Somewhat ironically, the first assassin retained for the job committed suicide before he could carry out the murder. Pohlot and Neustadt then hired a second purported assassin who turned out to be a cooperating witness for the Federal Bureau of Investigation. The cooperating witness was "wired" in FBI parlance, and managed to record on tape the following conversation with Stephen Pohlot:

CW [Cooperating Witness]: Uh, George [Neustadt] called me with this a couple weeks ago, on the phone, he said I got it, the ultimate favor to ask you.

\*　　\*　　\*　　\*　　\*　　\*

And I met him down the shore, he came up to my suite, and the situation being, he explained it to me, now let me ask you a question, is this only way out?

SP [Stephen Pohlot]: I don't see any other way.

CW: He said something about that she's got you fucked up with money or something (UI).

SP: Well she, yeah. She been cheating.

\*　　\*　　\*　　\*　　\*　　\*

This, this will appear to be an accident.

CW: Is that the way you want it?

SP: Yeah. Has to be. (Pause). Has to be because, she, she's got everybody in that fuckin' county after my ass.

\*　　\*　　\*　　\*　　\*　　\*

CW: George mentioned that you tried to uh, reach out to somebody already for this. (Pause).

SP: Uh, yes. Yeah, I did do that. I had to try, I had a very, very close friend, who, whatever needed to be done, through the years was done and it was like that, it was dead. Okay finished, very, very clean. I, no matter what, pressure on people for, for bills due, the whole package. Uh, I spoke to him, this, and saw him several times. So on this place he had a security company. And, notice I said had, uh he would be there from five o'clock to nine o'clock in the morning so it was ideal to go there, go there and talk to him. He tied one on one night and blew, blew his head off.

\*　　\*　　\*　　\*　　\*　　\*

Now I mention, I mention accident because it's the only way I'm gonna, I'm not gonna, gonna get, get off the fuck with, with the fuckin' authorities that, that she's.

CW: Yeah I understand that.

SP: (UI) . . .

CW: Well, well it's perfectly, I'll tell you, I, I, listen I'm not gonna, explain the business, it'll be an accident, and it'll be en route to the shrink.

\*　　\*　　\*　　\*　　\*　　\*

SP: Suppose this, this particular day my in-laws, her parents live in Yonkers also. (Clears throat). So we're, we are originally from Yonkers, okay. Now suppose she's got one of my kids in that car?

CW: No go. . . . You're, you're not paying for two anyway, God forbid. I mean we're, you're, you're, you're, you're paying for a job. If, there's a kid in the car, it goes the next day, the next visit . . .

The murder was arranged for a $25,000 fee. Subsequent to this conversation, Pohlot paid an $8,000 down payment on the murder contract, with the $17,000 balance to be paid on completion.

On September 23, 1985, defendants Pohlot and Neustadt were indicted in the Unit-

ed States District Court for the Eastern District of Pennsylvania for conspiracy in violation of 18 U.S.C. § 371. They were also charged with nine substantive counts of racketeering and aiding and abetting acts of racketeering involving the use of interstate commerce facilities in the commission of murder for hire in violation of 18 U.S.C. §§ 1952A and 2. After a jury trial, Pohlot was convicted on all counts of the indictment in which he was charged. Neustadt entered a guilty plea and testified for the Government.

On April 4, 1986, Pohlot was sentenced to fifteen years of imprisonment, five years of probation to run consecutive to his term of imprisonment, and fines totalling $30,-000. In addition, Pohlot was ordered to pay restitution in the amount of $27,000 to Elizabeth Pohlot. On October 31, 1985, Elizabeth Pohlot brought this action for damages under RICO and state tort law.

The complaint asserts three claims against defendant Pohlot. In the first claim, plaintiff alleges that Pohlot, Neustadt and "others unknown to plaintiff" constituted an "enterprise" formed to accomplish the assassination of plaintiff for the purpose of avoiding Pohlot's financial obligations and secreting Pohlot's personal and business assets from plaintiff and the state court. Plaintiff claims that Pohlot conspired with Neustadt to conduct the affairs of this enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d), and that she suffered damages as a result thereof.

It is alleged that from August 1, 1985 to September 10, 1985, as part of the RICO conspiracy, Pohlot and Neustadt contacted the cooperating witness and agreed to pay him $25,000 for the murder of plaintiff, in the process traveling interstate and using interstate telephone facilities. As overt acts of the RICO conspiracy, plaintiff alleges various telephone conversations and meetings between defendants and the cooperating witness, which had formed the basis for the criminal indictment. No allegations of wire fraud are made.

The second claim pleaded in the complaint was asserted only as against Neustadt.

In the third claim, plaintiff alleges that defendant Pohlot conducted the affairs of the alleged enterprise through a pattern of racketeering activity in violation of § 1962(c), and that she suffered damages as a result thereof. As predicate acts constituting the requisite pattern of racketeering activity, plaintiff again alleges Pohlot's telephone conversations and meeting with the cooperating witness.

Plaintiff's fourth claim is for intentional infliction of emotional distress and requires the exercise of pendent jurisdiction. In sum, all four claims asserted relate entirely to the single murder plot.

Shortly after bringing this civil action and while it remained pending, plaintiff apparently discovered the names of the "others unknown" who allegedly had formed an enterprise and conspired with Pohlot and Neustadt. In April 1986, she filed a second separate RICO action in this Court, docket number 85 Civ. 2729–CLB, against Pohlot, Neustadt, Pohlot's cousin Paul Novotny, Pohlot's sister-in-law Sally Broderick, and Pohlot's stockbroker Gateway Securities and its representative Homer Gronager. In this second action, plaintiff introduced a fraud theory. The second action detailed Pohlot's alleged diversion or concealment of assets, including the dates, times and places of efforts to remove cash and securities from safe deposit boxes, convert Pohlot's stock holdings to untraceable bearer bonds, secrete his cars and personal effects, skim profits from the pharmacy, and otherwise violate the state court temporary restraining order.

The second action was discontinued on October 27, 1986. As to defendant Pohlot, that discontinuance was without prejudice and, contrary to his contentions here, it has no *res judicata* or collateral estoppel effect in the case at bar. *See Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F.2d 38, 41 (2d Cir.1985). However, the Court does find merit in defendant's arguments addressed to pleading inadequacies and the failure, as a matter of

law, of plaintiff to establish in this lawsuit the essential elements of her civil RICO claims.

### Injury to Business or Property

■ Pohlot first argues that plaintiff has failed to plead injury to *her* business or property and that she has not alleged that Pohlot's RICO violations were the cause of such injury. To state a claim under RICO, plaintiff must allege that she was "injured in [her] business or property by reason of" a RICO violation. 18 U.S.C. § 1964. The courts have uniformly held that personal injuries and emotional distress do not come within RICO. *See Drake v. B.F. Goodrich,* 782 F.2d 638, 644 (6th Cir.1986); *Savastano v. Thompson Medical Co.,* 640 F.Supp. 1081, 1087 n. 5 (S.D.N.Y.1986) (Sand, J.); *Moore v. Eli Lilly and Co.,* 626 F.Supp. 365 (D.Mass.1986); *Campbell v. A.H. Robins Co., Inc.* 615 F.Supp. 496 (W.D.Wisc. 1985). Thus, damages for any physical or emotional injuries plaintiff sustained as a result of defendant's conduct are recoverable only under her pendent state law tort claim.

The instant complaint does not enumerate specific occasions of interference with or injury to *plaintiff's* property. On only one occasion does the complaint refer to defendant's diversion and concealment of assets. At paragraph 10, the complaint alleges that defendant attempted to murder plaintiff, "in order to avoid paying her maintenance and child support, and for the purpose of secreting defendant Pohlot's business and personal assets, among other reasons." Fairly read, this is an allegation of defendant's motive for the murder, not an allegation of injury to *plaintiff's* property. The complaint does not suggest any theory of property loss other than intimating that if plaintiff had been murdered, she like all of us would be subject to the law of nature that "you can't take it with you." Because fortunately plaintiff escaped harm, her claim that the failed murder scheme visited economic injury upon her in addition to personal injury is deficient under RICO.

The complaint's only description of plaintiff's injuries is found within the state law claim for emotional distress: "plaintiff ... [has] become nervous, afraid and fearful ... forced to endure permanent mental and physical suffering and inconvenience, which has and will continue to require long-term professional medical attention.... [P]laintiff can no longer enjoy her family life, she has lost the society, affection and attention of her children and was forced to undergo publicity and embarrassment." (Complaint para. 35, 36). These injuries are not cognizable under the civil RICO statute.

The Court has considered the additional information regarding property injury presented by plaintiff in affidavits on this motion. These affidavits essentially restate the allegations of fraud advanced in the discontinued second action. Such allegations of fraud, which must be pleaded with particularity, cannot be incorporated into the complaint by fiat. In any event, the affidavits fail either to raise a material issue of fact or to demonstrate that the property allegedly injured belonged to plaintiff or that she suffered injury of the sort contemplated by the RICO statute. Plaintiff's mere expectation of a favorable decree awarding her a share of Stephen Pohlot's assets in the state court matrimonial action does not constitute a property interest protected under RICO. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("to have a property interest ..., a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have legitimate claim of entitlement to it....").

### Pattern of Racketeering Activity

■ Defendant Pohlot also argues that the RICO claims cannot be maintained because his actions on behalf of the murder for hire scheme neither qualify as predicate acts under the RICO statute, nor constitute a pattern of racketeering activity. Section 1961(5) of the RICO statute requires plaintiff to allege a pattern of racketeering activity consisting of at least two predicate acts. Under § 1961(1)(A), violations of certain specified federal criminal statutes

qualify as predicate acts. In addition, the following state offenses qualify:

> "any act or threat involving *murder,* kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year."

(emphasis added).

As a simple recital of the RICO statute makes obvious, the crimes of which Stephen Pohlot was convicted clearly qualify as predicate acts of racketeering activity. It is true that in the criminal prosecution he was charged with conspiracy and murder for hire, federal offenses not listed as RICO predicate acts. However, under Pennsylvania or New York law, Pohlot's federal crimes would also be chargeable as criminal solicitation of murder and criminal conspiracy to commit murder, both punishable by imprisonment for more than one year. 18 Pa.Cons.Stat.Ann. §§ 902, 903 and 905 (Purdon 1983); N.Y.Penal Law §§ 100.13, 105.17 and 70.00 (McKinney 1975 and 1987 Supp.). Thus, as pleaded in the civil complaint, Stephen Pohlot's actions taken on behalf of the murder scheme qualify as predicate acts under RICO.

■ Defendant Pohlot's argument that the predicate acts alleged in the complaint do not constitute a "pattern" similarly ignores the applicable law. Pohlot relies on a footnote in the Supreme Court decision in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), suggesting that in evaluating RICO's pattern requirement, the lower courts focus on "the factor of continuity plus relationship" to discourage the use of RICO actions for their *in terrorem* effect. Pohlot contends that our Court of Appeals has construed this statement to require "multiple episodes" of criminal activity in order to establish the necessary pattern. Plainly, he has misread *United States v. Ianniello,* 808 F.2d 184 (2d Cir. 1986). In *Ianniello,* the court stated its agreement with those district courts which "reject the multiple episode requirement, contending that it goes beyond any require-

ment or legitimate implication of the *Sedima* footnote and provides a vague and unpredictable rule of decision." 808 F.2d at 192 and n. 15. The Second Circuit recently has emphasized that "two related predicate acts will suffice to establish a pattern under 18 U.S.C. § 1961(5)." *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d Cir.1987).

Plaintiff here has alleged at least two related criminal acts involving the solicitation of murder. The complaint therefore satisfies the pleading requirement for pattern of racketeering activity, even though each act alleged relates to a single murder scheme or "episode" of criminal activity.

*Enterprise*

■ In a development that is more "one of form and not of substance," *Ianniello,* 808 F.2d at 191, the Second Circuit has examined "the factor of continuity plus relationship" in the context of RICO's "enterprise" requirement as opposed to the "pattern" requirement. A consequence of this distinction for the case at bar is that plaintiff has failed to establish the *enterprise* element of her RICO claims as construed in the *Ianniello* and *Beck* decisions.

RICO prohibits the use of a pattern of racketeering activity to conduct the affairs of an enterprise. An enterprise "includes any individual, partnership, corporation, association or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). The Supreme Court has described a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct" and as an "ongoing organization, formal or informal [with] ... the various associates functioning as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). In the Second Circuit, this language translates into a requirement that "the enterprise be a *continuing operation* and that the [predicate] acts be related to the common purpose." *Beck,* at 51, *quoting Ianniello,* 808 F.2d at 191. *See also Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 21–22 (2d Cir.1983), *cert.*

*denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

Plaintiff's complaint pleads that Stephen Pohlot, Neustadt and "others unknown to plaintiff" formed an enterprise with the common purpose of murdering her in order to avoid defendant Pohlot's financial obligations to plaintiff and their children. Although the activities of the associates in this murder plot were sufficiently related for RICO purposes, the Court finds that the association was not continuing or ongoing. Its common purpose had an "obvious terminating goal or date"—the death of plaintiff. *See Ianniello,* 808 F.2d at 191–92. The various associates of this scheme did not function as a continuing unit to dispose of litigious spouses for hire; their plan was to procure the murder of one wife and then disband. *See Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528–29. As in *Beck,* where the Second Circuit affirmed the district court's dismissal of a RICO complaint for lack of an adequate enterprise allegation, Pohlot's scheme had "but one straightforward, shortlived goal ... [a]t the conclusion [of which], the alleged enterprise ceased functioning." At 51.

*Conclusion*

Because the enterprise alleged here was coextensive and coterminous with the single murder plot, it does not partake of the requisite continuity. Plaintiff has not raised any genuine issues of material fact as to the scope and limits of the enterprise, as alleged in the complaint. For this reason, and because plaintiff has failed to allege or substantiate injury to her business and property, defendant is entitled to judgment on the RICO claims.

The state law tort claim is without an independent basis of jurisdiction. The Court declines to exercise its pendent jurisdiction as plaintiff has available to her a state forum in which to pursue a remedy.

It is unnecessary to decide plaintiff's motion for partial summary judgment seeking to apply the doctrine of collateral estoppel to issues of fact which plaintiff contends

were established in the prior criminal conviction.

The Court grants defendant's motion for summary judgment. The Clerk shall enter final judgment, which shall dismiss counts one and three with prejudice and count four without prejudice. No costs.

So Ordered.