896 F.Supp. 250 (1995)
Manfred SEEMAN, Charles Seeman, William Seeman, Carol Seeman, Susan Seeman, and Ellen Seeman
v.
ARTHUR ANDERSEN & CO.
No. 2:91CV1034 (JAC).
United States District Court, D. Connecticut.
April 19, 1995.
*251 *252 Jacob Wieselman, Kleban & Wieselman, Simsbury, CT, for plaintiffs.
Shaun S. Sullivan, William H. Prout, Jr., John F. Conway, Wiggin & Dana, New Haven, CT, for defendant.

RULING ON DEFENDANT ARTHUR ANDERSEN'S MOTION TO DISMISS
JOSÉ A. CABRANES, Circuit Judge[*]:
The plaintiffs bring this securities fraud action pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., ("the 1934 Act"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and Connecticut common law. Pending before the court is Arthur Andersen's motion to dismiss all claims.

BACKGROUND
During the 1980's, Colonial Realty Co. ("Colonial") and its general partners, Jonathan Googel, Benjamin Sisti, and Frank Shuch, sold limited partnership interests in various real estate properties located primarily in the state of Connecticut, in addition to related investments such as debt offerings, land leases and lease-back arrangements. The plaintiffs allege that all these investments were structured and sold as part of an "elaborate `Ponzi' scheme." Complaint (filed Nov. 12, 1991) ("Complaint") ¶ 53. According *253 to the plaintiffs, they lost over $1.4 million after purchasing limited partnership interests in the following Colonial limited partnerships: Colonial Normandy, Colonial Gold, Colonial Metro, Colonial Portsmouth, Colonial Broadwater, Colonial Constitution, Colonial Mesa, Colonial Wyndham, Colonial Equipment Leasing I, Colonial Growth, Colonial Land Investors IV, and Colonial Gold Zero Coupon Bonds.[1] Complaint ¶ 65.
The plaintiffs allege that between 1982 and 1991, Arthur Andersen provided them accounting, tax and financial services. Complaint ¶ 16. While doing so, Arthur Andersen allegedly advised the plaintiffs to purchase each of their twelve Colonial investments, for nine of which Andersen had prepared or helped prepare private placement memoranda ("PPMs") replete with allegedly misleading and false financial projections.[2] And in recommending the Colonial investments to the plaintiffs, Arthur Andersen allegedly failed to disclose important facts about its relationship to Colonial and its general partners. According to the plaintiffs, they would not have purchased any Colonial investments in the absence of Arthur Andersen's recommendations. Complaint ¶ 69.
Colonial Realty collapsed in 1990, leading to the filing of several class actions. Following a status conference on November 27, 1990, the various actions were combined into one consolidated complaint. The parties then agreed to commence separate "related actions," with each action relating to a specific Colonial partnership. Plaintiffs Manfred Seeman and Susan Seeman were each named plaintiffs in two such related actions, but chose to withdraw, having decided to file an independent action on November 12, 1991. On March 5, 1992, the plaintiffs amended their Complaint to add a claim under the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42-110a et seq. ("CUTPA").
On March 10, 1993, Arthur Andersen moved to dismiss both the Seemans' independent claims and all claims asserted in the class actions. This court issued a ruling on Andersen's motion to dismiss the class claims on April 11, 1994. See In re Colonial Ltd. Partnership Litig., 854 F.Supp. 64 (D.Conn. 1994). That decision provides some guidance in deciding several of the claims at issue here and will be relied upon accordingly,[3] though the court recognizes that this case also presents unique allegations and circumstances in light of the allegedly close professional relationship between Arthur Andersen and these plaintiffs. Complaint ¶ 60.

DISCUSSION
In deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
In deciding a motion to dismiss, the court has discretion to consider an offering document which the plaintiffs had in their possession or had knowledge of and upon which they relied in bringing suit. See Colonial Ltd. Partnership Litig., 854 F.Supp. at 79 (citing cases). In light of the plaintiffs' heavy reliance on the Private Placement Memoranda ("PPMs") in their Complaint, the court may consider them in deciding the motion to dismiss. "[T]o the extent that the [PPM] contradicts allegations in the complaint, the [PPM] controls." Id. (citing Ferber v. Travelers Corp., 802 F.Supp. 698, 702 (D.Conn.1992)). On the other hand, the allegations made by the plaintiffs in their Memorandum of Law in Opposition to Defendant Arthur Andersen's Motion to Dismiss ("Memorandum in Opposition") "stand on a *254 different footing." Id. See Morgan Distributing Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir.1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted).

I. Statutes of Limitations

Arthur Andersen argues that several of plaintiffs' federal and state law claims are time-barred. The court will consider these claims seriatim.

A. Section 10(b) Claims
According to Arthur Andersen, the plaintiffs' section 10(b)[4] claims are time-barred. As this court explained in Colonial Ltd. Partnership Litig., section 10(b) claims filed after November 8, 1990 are subject to the "one-year/three-year rule" announced in both Ceres Partners v. GEL Assocs., 918 F.2d 349 (2d Cir.1990), and Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Under this rule,
No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.
15 U.S.C. § 78i(e). This rule is not subject to the doctrine of equitable tolling. Lampf, 501 U.S. at 362-64, 111 S.Ct. at 2782. The plaintiffs contend that their claims "relate back" to the complaint filed on October 8, 1990 in Salerno v. Colonial Equities Corp., Civil Action No. H-90-832 (TEC) (D.Conn.), and thus are subject to a two-year limitations period under the Connecticut Uniform Securities Act, which is subject to the doctrines of equitable tolling and fraudulent concealment. The court rejected this very argument in Colonial Ltd. Partnership Litig., 854 F.Supp. at 82. Because Salerno had standing only with respect to Colonial Capitol Center Limited Partnership  one in which the plaintiffs did not invest  the Seemans cannot rely on his filing date. Instead, the statute of limitations for the plaintiffs' section 10(b) claims was tolled on June 17, 1991 (the date complaints were filed for each separate Colonial syndication involved in the "related actions") with respect to the Gold, Broadwater, Mesa, Growth and Wyndham limited partnerships, see Colonial Ltd. Partnership Litig., 854 F.Supp. at 83, and was tolled on November 12, 1991 (the date this action was filed) with respect to the Metro, Constitution, Equipment Leasing I, Land Investors IV, and Gold Zero Coupon limited partnerships.[5] All the Seemans' claims are therefore subject to the one-year/three-year rule.
Arthur Andersen argues that some of plaintiffs' section 10(b) claims are barred by the three-year repose period, while others are barred by the one-year discovery rule. As the court held in Colonial Ltd. Partnership Litig., any time-bar arguments based on the one-year discovery rule cannot be resolved properly at this stage of the litigation. Whether the plaintiffs had notice of the alleged fraud or whether a reasonable investor of ordinary intelligence would have discovered the fraud, see Dodds v. Cigna Securities, Inc., 12 F.3d 346, 350 (2d Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994), by November 12, 1990 (for Metro, Constitution, Equipment Leasing I, *255 Land Investor IV, and Gold Zero Coupon), June 17, 1990 (for Gold, Portsmouth, Broadwater, Mesa, Wyndham), or November 21, 1989 (for Portsmouth), are questions of fact that cannot be answered on this record. See Colonial Ltd. Partnership Litig., 854 F.Supp. at 84.
Arthur Andersen's arguments with respect to the three-year absolute repose provision, on the other hand, can be decided now according to the approach set out in Colonial Ltd. Partnership Litig. In that case, the closing date indicated in the PPMs was deemed to be the date of purchase for purposes of deciding statutes of limitations questions.[6] Because the closing date for Colonial Gold and Colonial Metro was December 31, 1987, the plaintiffs' section 10(b) claims with respect to these investments were time-barred as of December 31, 1990, unless the limitations period was tolled before that date. The plaintiffs' Colonial Wyndham (May 31, 1988 closing date) and Land Investors IV (June 30, 1987 closing date) claims under section 10(b) also are time-barred because they too were filed over three years after the closing dates.
Accordingly, the plaintiffs' section 10(b) claims that are barred by the three-year repose provision are dismissed with prejudice.

B. Common Law Fraud Claims
The plaintiffs' common law fraud claims with respect to the Gold, Metro, Wyndham, and Land Investors IV Limited Partnerships are likewise time-barred and must be dismissed. These claims are also subject to a three-year limitations period, see Conn.Gen.Stat. § 52-577,[7] and the plaintiffs have not adequately alleged fraudulent concealment within the meaning of Conn.Gen. Stat. § 52-595.[8] In Halbrecht v. Prudential-Bache Properties, Inc., 1992 WL 336757, at *4 (D.Conn. July 25, 1991), this court stated that "plaintiffs seeking to toll the statute of limitations on the basis of fraudulent concealment [under § 52-595] must show that the defendants' `conduct or representations were directed to the very point of inducing delay in the bringing of the lawsuit.'" (citation omitted) The plaintiffs fail to allege any facts concerning actions of Arthur Andersen to conceal the fraud from them. Accordingly, these common law fraud claims are dismissed without prejudice to the filing of an amended complaint adequately pleading fraudulent concealment by no later than May 31, 1995.

C. Other State Law Claims: Negligent Misrepresentation, Breach of Fiduciary Duty and Accountant Malpractice
Arthur Andersen argues that several of the plaintiffs' negligent misrepresentation claims, breach of fiduciary duty claims, and accountant malpractice claims are time-barred. Under a three-year limitations period,[9] many of these claims would indeed be *256 time-barred if the limitations period were not tolled.[10] But the plaintiffs contend that Arthur Andersen breached a "continuing duty" owed to them in the provision of tax, financial and accounting services continuously from 1982-1991. According to the plaintiffs, by breaching this continuing duty, Arthur Andersen tolled the limitations period until it stopped giving the plaintiffs advice about the Colonial investments.
Although Arthur Andersen's purported advice with respect to each Colonial investment does not constitute continuous tortious conduct (the advice on each investment is a separate, identifiable act), the plaintiffs have alleged sufficient facts to raise a question as to whether Arthur Andersen breached a continuing duty to the plaintiffs created by a fiduciary relationship. If a fiduciary relationship did exist between the parties, then Arthur Andersen arguably had a continuing responsibility to provide the plaintiffs truthful information and to inform the plaintiffs of any misrepresentations it may have made during the course of the fiduciary relationship. Accordingly, the court will not dismiss these claims at this stage. Arthur Andersen is, of course, free to seek dismissal of these claims, together with other claims under section 10(b)'s one-year discovery limitations bar, in a motion for summary judgment.

D. CUTPA Claims
The plaintiffs amended their complaint in March 1992 to add claims under the Connecticut Unfair Trade Practices Act ("CUTPA"). We need not reach the question whether the plaintiffs' CUTPA claims are time-barred. Arthur Andersen has argued that the CUTPA claims must be dismissed because CUTPA does not apply to cases involving the purchase or sale of securities, citing Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 180, 510 A.2d 972 (1986). The court agrees. The plaintiffs attempt to distinguish their claims by emphasizing that Arthur Andersen owed them a duty to provide accounting services in an honest manner. Their attempt is unsuccessful, however, because the allegations in the complaint concern the giving of fraudulent advice in connection with their purchase of various Colonial securities. The fact that accountants are not exempt from the Act does not mean that any claim involving accountants is covered by CUTPA. Russell therefore controls this case and the plaintiffs' CUTPA claims must be dismissed with prejudice.

II. Failure to State a Section 10(b) Claim
Arthur Andersen argues that the plaintiffs have failed to state a section 10(b) claim and have failed to plead fraud with particularity in violation of Rule 9(b) of the Federal Rules of Civil Procedure.[11] The court will consider these contentions in turn; it should be noted, however, that Colonial Ltd. Partnership Litig. has already rejected many of the arguments made here by Arthur Andersen.
Section 10(b) of the 1934 Act prohibits fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). To state a claim under section 10(b), plaintiffs must allege:
(1) damage to the plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with scienter (i.e., an intent to deceive, manipulate or defraud, or possibly with reckless disregard), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange.
Royal Am. Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1015 (2d Cir.1989) (citations omitted).

*257 A. Materiality and Reliance
Arthur Andersen argues first that the plaintiffs do not satisfy the materiality requirement of section 10(b) because the cautionary language in the PPMs forecloses any claim of reasonable reliance on the financial projections. In Colonial Ltd. Partnership Litig., however, this court held that "[w]hile the cautionary language may have prevented reliance on the projections as a forecast of the future, this language did not prevent reliance on them as indicating an absence of fraud." 854 F.Supp. at 93. In other words, the plaintiffs may not have been entitled to rely on the projections as an indicator of the investments' success, but it would have been reasonable for them to rely on the projections as an indication that the investment was not a sham, notwithstanding the cautionary language. Accordingly, the court will not dismiss the plaintiffs' section 10(b) claims on the ground of unreasonable reliance.

B. Loss Causation
Arthur Andersen next argues that the plaintiffs have failed to allege loss causation because they have not alleged that the misrepresentations proximately caused their losses. The court disagrees. In Colonial Ltd. Partnership Litig. this court held that the class plaintiffs alleged loss causation by asserting that Arthur Andersen knew that the projections were fraudulent when made and would be used to induce investment in the limited partnerships. Id. at 94. Because the plaintiffs make the same allegations here, see, e.g., Complaint ¶¶ 289, 290, 368, 369, they too have adequately alleged loss causation.
Arthur Andersen maintains that the plaintiffs must allege that the misrepresentations themselves caused the losses. Taken to its logical conclusion, Arthur Andersen's argument would immunize defendants who set up an entirely fraudulent investment. This is so because where an investment is a total sham, it is not the misleading projections that cause the investment to lose money. The projections serve only as a cover for the fraud, and thus do not actually cause the investment to lose money: the investment was never destined to make money for investors in the first place. Another way of viewing the problem is to consider the effect the alleged misrepresentations might have had in perpetuating the alleged Ponzi scheme. By inducing more and more people to invest in Colonial, the alleged false projections permitted the Ponzi scheme to survive for a long period of time and in this sense "caused" many investors to lose their money. Accordingly, the plaintiffs' section 10(b) claims will not be dismissed for failure to plead loss causation.

C. Rule 9(b)
Arthur Andersen argues that the plaintiffs' section 10(b) claims do not meet the pleading requirements of Rule 9(b). To satisfy the requirements of Rule 9(b), a complaint must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify the persons responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989) (citing Goldman v. Belden, 754 F.2d 1059, 1069-70 (2d Cir. 1985)).
With respect to claims pursuant to section 10(b), the complaint should, at a minimum, state the time, place, speaker, and content of the alleged misrepresentations or omissions. Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986). In addition, in order to adequately plead scienter, the complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." Cosmas, 886 F.2d at 12-13 (citing Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), overruled on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989) (en banc)).
In Colonial Ltd. Partnership Litig., this court held that the class plaintiffs adequately pleaded scienter. Id. at 97. Since the relevant allegations here are identical, that decision controls this case and the plaintiffs' claims will not be dismissed for failure to plead scienter.

III. Seeman-Unique Allegations
The court now turns to the "Seeman-Unique" allegations to determine whether their content satisfies both Rule 12(b)(6) and Rule 9(b).

*258 A. "Sound and Viable Investment"
Arthur Andersen points to two allegations  that Arthur Andersen represented that the Limited Partnerships were "sound and viable" investments, Complaint ¶¶ 80, 147, 233, 311, 395, 482, 544, 659, 751, 835, 903, 912, and that Arthur Andersen "failed to disclose ... material information concerning the continuing viability of the Colonial investments", Complaint ¶¶ 81(d), 148(d), 234(d), 312(d), 396(d), 483(d), 545(d), 660(d), 752(d), 863(d), 906(d), 912(d)  and contends that they fail to state a claim under section 10(b). According to Arthur Andersen, it had no duty "to characterize the investments in terms chosen by the plaintiffs with the benefit of hindsight." Memorandum of Arthur Andersen in Support of Motion to Dismiss at 22. While Andersen is right on that score, this court noted in Colonial Ltd. Partnership Litig. that Arthur Andersen's argument missed the point, in light of the facts alleged:
[T]he plaintiffs have not only alleged that Arthur Andersen failed to warn them that the investment was a lemon; the plaintiffs have also alleged that Arthur Andersen failed to reveal, and took affirmative actions to conceal, the underlying fraud.
Id. at 96.
Contending that these two allegations are vague, Arthur Andersen seeks to dismiss them on Rule 9(b) grounds as well. The court agrees that the plaintiffs' allegation that Andersen "failed to disclose ... material information concerning the continuing viability of the investments", see e.g., Complaint ¶ 148(d)  standing alone  is indeed vague. Yet the Complaint proceeds to detail the alleged baseless projections, excessive operating fees, and misappropriation of funds, all of which is material information that the plaintiffs allege was never disclosed to them. Similarly, the court believes that the plaintiffs' allegation that Arthur Andersen told them that the investments were "sound and viable" when Andersen allegedly knew the investments were not does not violate Rule 9(b). The plaintiffs allege many reasons why the investments were not sound and viable and allege that Andersen gave them this misleading advice before they invested in each limited partnership. The plaintiffs have also identified the years during which they received this advice and have identified David Federman, Robert Wylie and Louis Obermeir as accountants with whom they developed an especially "close professional relationship" between 1982 and 1991. In short, these "Seeman-unique" allegations provide Arthur Andersen "fair notice" of the plaintiffs' claims, see Steiner v. Shawmut Nat. Corp., 766 F.Supp. 1236, 1242 (D.Conn. 1991); and, for the reasons stated above, they also state claims upon which relief can be granted.

B. "The Existence and Extent of the Professional Relationship"; "Blatant Bias and Lack of Impartiality"; and "Andersen's Role in Advising Colonial Realty Salespersons"
Andersen isolates the above-captioned allegations and contends that each fails to satisfy both Rule 12(b)(6) and Rule 9(b). The court disagrees. While standing alone some of these allegations might fail to satisfy Rule 9(b), taken together, the allegations in the Complaint suggest that Arthur Andersen was not giving the plaintiffs objective advice about the Colonial investments because there was a family relationship between Frank Shuch, a principal of Colonial, and David Federman, a partner of Arthur Andersen, and because Andersen played a role in marketing and selling the investments. As this court held in Colonial Ltd. Partnership Litig., "[t]he plaintiffs' allegations concerning the Shuch/Federman relationship are sufficient to raise a question as to Arthur Andersen's independence," 854 F.Supp. at 96, and the Seemans here contend that Arthur Andersen had an obligation to disclose this sort of information because Arthur Andersen owed them a fiduciary duty. In light of the allegedly longstanding accountant/client relationship between Arthur Andersen and the Seemans, the court will not dismiss the plaintiffs' claims based on Arthur Andersen's failure to disclose information regarding Arthur Andersen's asserted relationship with Shuch and its purported role in helping sell the Colonial investments.

IV. Pendent State Law Claims
Arthur Andersen seeks to dismiss the plaintiffs' pendent state law claims on the *259 grounds that (1) reliance on the alleged misrepresentations was unjustified, (2) the plaintiffs failed to allege loss causation and (3) the plaintiffs failed to plead fraud with particularity. Because the court has already rejected these arguments with respect to the plaintiffs' section 10(b) claims, the court will not dismiss the pendent state law claims on these grounds.

V. Aiding and Abetting Claims
Any claims alleging aiding and abetting liability must be dismissed in accordance with the Supreme Court's recent decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., ___ U.S. ___, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (holding that private plaintiffs cannot bring aiding and abetting claims under section 10(b) of the 1934 Act). In the court's view, the Complaint alleges facts  Arthur Andersen helped prepare several of the PPMs that included misrepresentations, and gave its client misleading advice that was used to purchase securities  that could support a finding that Arthur Andersen committed a primary violation of section 10(b). See id. at ___, 114 S.Ct. at 1455 ("Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5") (emphasis added). Arthur Andersen, of course, is free to raise at a later stage the argument that the facts at worst support nothing more than a claim of aiding and abetting securities fraud  that is, that Andersen itself did not commit any manipulative or deceptive acts, but rather, only gave aid to other parties who committed manipulative or deceptive acts.[12]

VI. Miscellaneous Allegations
Finally, Arthur Andersen makes several arguments with respect to particular paragraphs in the Complaint. First, Arthur Andersen asserts that the plaintiffs' allegations in ¶ 906(d) and ¶ 913(d) (alleging Andersen's failure to characterize reliability of projections made by other accounting firms) fail to state claims because, among other things, the Complaint does not state what accounting firms were involved, why their work was unreliable, or why Andersen had a duty to critique their work. The court agrees that these claims are too vague and must be dismissed. In addition, the claim in ¶ 905 must be dismissed because the Seemans do not have standing to raise the allegation that Andersen induced them to retain interests in Land Investors IV. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 745-49, 95 S.Ct. 1917, 1930-31, 44 L.Ed.2d 539 (1975) (holding that civil damages under section 10(b) available only to purchaser or seller of securities because of difficulties in proof presented by claims of those who contend they failed to purchase or sell stock due to fraud). And the court agrees with Arthur Andersen that ¶ 913(g) is a conclusory allegation because it alleges merely that Andersen failed to disclose that interests in Gold Zero were offered in violation of the securities laws. Accordingly, the plaintiffs must rely on the more specific allegations included in the Complaint in order to obtain relief.[13]

CONCLUSION
Based on the reasons stated above, Arthur Andersen's motion to dismiss (filed March 10, 1993) (doc. # 44) is GRANTED in part and DENIED in part.
To summarize:
(1) All CUTPA claims are dismissed with prejudice.
(2) All aiding and abetting claims are dismissed with prejudice.
(3) The plaintiffs' section 10(b) claims in connection with the Gold, Metro, Wyndham, and Land Investors IV Limited Partnerships are dismissed with prejudice.
*260 (4) The plaintiffs common law fraud claims in connection with the Gold, Metro, Wyndham, and Land Investors IV Limited Partnerships are dismissed without prejudice to the filing of an amended complaint adequately alleging fraudulent concealment by no later than May 31, 1995.
(5) The claim based on retaining interests in Land Investors IV Limited Partnership is dismissed with prejudice.
(6) The claims based on Arthur Andersen's alleged failure to characterize the reliability of other unnamed accounting firms' work are dismissed with prejudice.
It is so ordered.
NOTES
[*] Of the United States Court of Appeals for the Second Circuit, sitting by designation.
[1] At least one plaintiff invested in each of these limited partnerships. See Complaint ¶¶ 10-15 (detailing each individual plaintiff's investments).
[2] Andersen allegedly helped prepare PPMs for Gold, Metro, Portsmouth, Broadwater, Constitution, Mesa, Wyndham, Equipment Leasing, and Gold Zero Coupon. Complaint ¶¶ 143, 226, 306, 390, 543, 652, 746, 828, 909.
[3] Many of the Seemans' allegations are identical to those in the related actions.
[4] Section 10(b) of the 1934 Act provides that

[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ...
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).
[5] Karen Komar and Raymond Hansen had standing to pursue claims relating to Colonial Portsmouth when they filed the "omnibus" complaint on February 14, 1991, thereby tolling the statutes of limitations on November 21, 1990, the day they filed their original complaint. Colonial Ltd. Partnership Litig., 854 F.Supp. at 82-83. Accordingly, November 21, 1990, is the plaintiffs' filing date for purposes of determining the timeliness of the plaintiffs' Colonial Portsmouth claims.
[6] The court cannot credit the plaintiffs' allegations in their Memorandum in Opposition that they purchased some of their limited partnership interests after the closing date, because these allegations appear nowhere in the Complaint. See Colonial Ltd. Partnership Litig., 854 F.Supp. at 79; Morgan Distributing Co., 868 F.2d at 995.
[7] Conn.Gen.Stat. § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
[8] Conn.Gen.Stat. § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."
[9] The parties disagree about the limitations period for accountant malpractice. Arthur Andersen contends that accountant malpractice is subject to the two-year period for negligence claims under Conn.Gen.Stat. § 52-584. The plaintiffs respond that accountant malpractice claims sound in both tort and contract and therefore are entitled to either a three-year (for torts) or six-year (for contracts) period. Because the plaintiffs' accountant malpractice claims sound in tort, see Complaint ¶ 944, they are at most entitled to the three-year limitations period under § 52-577. Even if Arthur Andersen were correct in likening accountant malpractice to negligence, Conn.Gen. Stat. § 52-584 requires that a complainant bring his claim within two years of discovering the injury. And, for the reasons discussed earlier, it would be inappropriate to dismiss any of the plaintiffs' accountant malpractice claims under the two-year discovery rule at this juncture. In any event, because § 52-584 mentions physicians and surgeons, but not accountants, it may be inferred that accountant malpractice claims are excluded from § 52-584 and are instead subject to the catch-all torts limitation period under § 52-577.
[10] All state law claims relating to the Gold, Metro, Wyndham, and Land Investors IV Limited Partnerships would be barred in the absence of equitable tolling.
[11] Rule 9(b) provides, in relevant part: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."
[12] The question of what constitutes aiding and abetting, in contrast to a primary violation, is complicated by the fact that section 10(b) makes it unlawful for a person "directly or indirectly" to employ any manipulative device or make any untrue statement of a material fact. Suffice it to say that the distinction between indirectly making a misstatement and aiding someone who has made a misstatement need not be resolved now on a factually undeveloped record.
[13] The court notes that the plaintiffs did not respond to any of these specific arguments and therefore their claims in the identified paragraphs could be dismissed on that ground alone.