### W.E. DARIN CONSTRUCTION ENTERPRISES, INC., Plaintiff,

v.

### DETROIT COKE COMPANY, Tonawanda Coke Corporation, The Coyne Group, Inc., f/k/a the Crane Group, Inc., J.D. Crane, and John F. McNamara, Defendants.

### No. 92–CV–480A.

United States District Court, W.D. New York.

Feb. 24, 1993.

Robert W. Michalak, Harry E. Werner, Buffalo, NY, for plaintiff.

John T. Frizzell, Buffalo, NY, for defendants Coyne Group, Inc. and John F. McNamara.

John P. Freedenberg, Buffalo, NY, for defendant Detroit Coke Co.

Robert B. Conklin, Buffalo, NY, for defendants Tonawanda Coke Corp. and J.D. Crane.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on September 4, 1992. Defendants filed motions to dismiss plaintiff's complaint on various grounds including failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* On December 17, 1992, Magistrate Judge Heckman filed a Report and Recommendation granting defendants' motion to dismiss the RICO count (plaintiff's sixth cause of action) pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), without leave to replead, and remanding the case to state court.

Plaintiff filed objections to the Report and Recommendation on January 7, 1993.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, the Court dismisses plaintiff's sixth cause of action pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) without leave to replead. Further, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and remands the matter to state court pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned for all pretrial proceedings and to hear and report on all dispositive motions pursuant to 28 U.S.C. § 636(b)(1). Currently pending before the Court are Defendants' joint motion to dismiss the complaint for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Defendant Detroit Coke's motion to dismiss for lack of personal jurisdiction. Detroit Coke has agreed to hold the latter motion in abeyance pending the outcome of the former motion. In addition, Defendants Tonawanda Coke and J.D. Crane have withdrawn their pending motion to dismiss for lack of personal service, without prejudice.

■ For the reasons set forth below, Defendants' motion to dismiss the RICO claim should be granted and the case should be remanded to state court.[1]

---

1. A motion to remand a case to state court is not dispositive and therefore can be decided by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). *See, e.g., McDonough v. Blue Cross of Northeastern Pennsylvania,* 131 F.R.D. 467, 472 (W.D.Pa. 1990); *Acme Electric Corp. v. Sigma Instruments,* *Inc.,* 121 F.R.D. 26 (W.D.N.Y.1988). However, since this motion also raises the merits of Plaintiff's RICO claim, it is dispositive as to that claim. Accordingly, that portion of the motion must be determined under 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL BACKGROUND

This case was originally commenced in state court. The complaint states five claims arising under state law and one claim alleging a violation of the federal RICO statute, 18 U.S.C. § 1962(c). All of the claims are based on Detroit Coke's failure to pay Plaintiff for the erection of a filter "baghouse" at Detroit Coke's plant in Detroit, Michigan.

On July 27, 1992, the Defendants removed the case to federal court under 28 U.S.C. § 1441(a) based on the federal RICO claim. Defendants now move to dismiss the RICO claim on various grounds and to remand the remaining state claims to state court.

## FACTS

Since this is a motion to dismiss under Fed.R.Civ.P. 9(b) and 12(b)(6), the complaint must be taken as true. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). According to the complaint, on March 1, 1991, Plaintiff was contacted by Defendant McNamara who, acting individually and as an agent for the Carondelet Coke Co. (not a party to this action) and Defendants Tonawanda Coke and the Coyne Group, negotiated and executed a purchase order for the dismantling of a baghouse at Carondelet's St. Louis, Missouri plant. A baghouse is a structure in which coke production exhaust is filtered prior to passing through the emissions stack into the outside air. The filtered coke particulants are collected in bags and disposed of. The baghouse was dismantled between March and May, 1991, and Plaintiff was paid in full for this work.

Thereafter, on approximately July 1, 1991, McNamara contacted Plaintiff to arrange for the re-erection of the dismantled baghouse at Detroit Coke's Michigan facility. McNamara did not sign the purchase order issued by Detroit Coke for this work. The baghouse was erected between July and September, 1991.

Plaintiff submitted an invoice dated August 23, 1991, for $45,072.00. Based on assurances from McNamara that all invoices would be paid, Plaintiff continued to perform work on the baghouse at an additional value of $78,797.42.

Plaintiff alleges that, on September 2, 1991, it was advised by Detroit Coke that no money had been allocated for payment of the baghouse invoices. Between September 3 and 5, McNamara advised Plaintiff that payment would be made by September 6. Having received no payment on September 6, Plaintiff threatened to quit. Plaintiff was also advised by Detroit Coke on September 6 that any payment would have to come from McNamara and Defendant Crane, the President of Detroit Coke. McNamara promised payment by September 9 or 10, and again promised payment by September 15. Detroit Coke closed for business on September 12, 1991. No payment has been made to Plaintiff for the erection of the baghouse.

In its state court complaint dated June 12, 1992, Plaintiff alleges that this course of action by Defendants resulted in damages in the amount of $123,869.42 based on (1) breach of contract, (2) negligence, (3) fraud, (4) unjust enrichment, (5) conversion, and (6) RICO. Plaintiff further alleges that Defendants used a similar scheme to defraud at least 12 other contractors into providing goods and services to Detroit Coke without any intention of paying.

On January 22, 1991, Plaintiff filed a RICO case statement (Item 5) pursuant to this Court's standing order.

## DISCUSSION

1. RICO's Pleading Requirements.

Plaintiff's civil RICO cause of action asserts that the Defendants were associated with an "enterprise" which, through a "pattern of racketeering activity," fraudulently arranged commercial transactions—such as the erection of the baghouse—without intending to pay for the goods and services provided. Plaintiff alleges that the enterprise defrauded Plaintiff into providing labor and materials for the baghouse, and fraudulently induced Plaintiff into continuing to do the work, in violation of 18 U.S.C. § 1962 subsections (a), (b), (c) and (d). The predicate criminal acts are alleged to be mail

fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

In order to state a civil claim for damages under RICO, Plaintiff faces two distinct pleading burdens. First, it must allege that Defendants violated the substantive RICO statute,[2] commonly known as "criminal RICO." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). As stated by the Second Circuit in *Moss:*

> In so doing, [a plaintiff] must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Id.* (citing 18 U.S.C. § 1962(a)–(c)); *see also Maussner v. McCormick*, 653 F.Supp. 131, 133 (W.D.N.Y.1986).

If Plaintiff adequately alleges a § 1962 violation, it then must meet its second pleading burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs. To satisfy this burden, Plaintiff must allege that it was "injured in [its] business or property *by reason of* a violation of § 1962." 18 U.S.C. § 1964(c) (emphasis added); *Moss v. Morgan Stanley, supra* at 17.

**2.** 18 U.S.C. § 1962 provides in relevant part as follows:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

**2. Sufficiency of Fraud Allegations under Fed.R.Civ.P. 9(b).**

Plaintiff must meet the pleading requirements of Fed.R.Civ.P. 9(b) because it has used the mail fraud and wire fraud statutes as the basis of Defendants' predicate acts of racketeering. 18 U.S.C. § 1961(1);[3] *see Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244, 248 (S.D.N.Y.1986). Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

■ To satisfy Rule 9(b), a RICO complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *see Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992–93 (7th Cir.1991) (RICO plaintiffs, like all parties pleading fraud in federal court, must state the time, place and content of the alleged communications perpetrating the fraud; mere references to plans and schemes are too conclusory to satisfy Rule 9(b)). While knowledge of the fraud or intent to defraud on the part of the defen-

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**3.** 18 U.S.C. § 1961(1) defines "racketeering activity" as:

> (B) any act which is indictable under any of the following provisions of Title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)....

dant may be averred generally, Rule 9(b) also requires such allegations of "scienter" to be supported by facts giving rise to a strong inference that defendant knew the statements to be false and intended to defraud plaintiff. *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990); *Beck, supra*, 820 F.2d at 50; *Finkel v. Stratton Corp.*, 754 F.Supp. 318, 328 (S.D.N.Y.1990).

■ The federal mail and wire fraud statutes require a showing of intentional fraud, or "reckless indifference to the truth." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990); *Beck, supra*, 820 F.2d at 49; *United States v. Von Barta*, 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). Acts done inadvertently, or in good faith without intent to defraud, do not satisfy the requisite "knowledge and criminal intent" elements of the mail and wire fraud statutes. *O'Malley, supra*, 896 F.2d at 706 (quoting *United States v. Sheiner*, 273 F.Supp. 977, 983 (S.D.N.Y.1967), *aff'd*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969)).

■ Thus, in order to sufficiently plead mail or wire fraud as RICO predicate acts in this case, Plaintiff must allege a factual basis giving rise to a "strong inference" that Defendants knowingly and intentionally devised a scheme fraudulently to induce Plaintiff to erect the baghouse without ever intending to pay Plaintiff for the work performed, and used the mails and wires to carry out that scheme. *See Beck, supra*, 820 F.2d at 50; *Soper, supra*, 632 F.Supp. at 249–50.

■ Plaintiff contends that it has met its Rule 9(b) burden by specifically alleging precise dates and times when McNamara and the other Defendants or their agents used the mails and telephone wires to make fraudulent written or oral promises to pay Plaintiff for the erection of the baghouse. A review of the allegations in the complaint, however, reveals only minimal facts from which any scheme to defraud could possibly be inferred: (1) that McNamara "contacted" Plaintiff on July 1, 1991 concerning erection of the baghouse (Complaint, ¶ 19); (2) that Detroit Coke issued a written purchase order for the work (¶ 21); (3) that sometime between September 3 and 5, 1991, McNamara "advised" Plaintiff that payment on its invoices would be made by September 6 (¶ 26); (4) that McNamara, in response to Plaintiff's threat to discontinue work on the baghouse, again assured Plaintiff that payment would be made by September 9 or 10 (¶ 28); and (5) that sometime between September 9 and 11, 1991, McNamara "advised" Plaintiff that payment "would probably be available by September 15th" (¶ 31).

These allegations fail to set forth any particulars as to the respect in which the oral or written representations made by McNamara or Detroit Coke were fraudulent, or how the mails or wires were utilized to convey such representations. Moreover, the factual basis established by these allegations is insufficient to support a "strong" inference that McNamara or any of the named Defendants knew that McNamara's representations of payment were false *and* that McNamara specifically intended to defraud Plaintiff, as required by the mail and wire fraud statutes.

Plaintiff's RICO case statement sheds considerable light on the true nature of those representations. According to Plaintiff, it was advised by Defendant Crane on September 13, 1991 that Detroit Coke had ceased operations because loans and other sources of funding for the baghouse project had fallen through. Item 5, p. 5. The inference therefore arises that all of McNamara's representations were made prior to September 13 in good faith anticipation that funding would soon be available to pay Plaintiff and Detroit Coke's other creditors, thereby allowing Detroit Coke to continue as a viable business entity. This inference is as strong, if not stronger, than any inference that Defendants knowingly and intentionally devised a scheme to defraud Plaintiff.

■ According to Plaintiff, the fact that Defendants hired Plaintiff for the baghouse job with the knowledge that no funding was available for the project gives rise to a strong inference of intent to defraud. However, fraudulent intent to breach a promise cannot be inferred merely from nonperformance. *Soper, supra*, 632 F.Supp. at 249 (citing cases).

Other conclusory allegations in the complaint involving the relationships between McNamara and the other named Defendants, and unsubstantiated allegations that at least twelve other contractors have fallen victim to the same scheme, do not provide a factual basis for the inference that those Defendants used the wires and mails "for the purposes of executing such scheme or artifice. . . ." 18 U.S.C. §§ 1341, 1343.

The allegations in the complaint establish at most that certain promises to pay for the baghouse work were made, and that those promises were breached when the financing for the project fell through. Under the standards set forth in the statutes and caselaw discussed above, these allegations are insufficient to plead RICO predicate acts of mail and wire fraud with the particularity required by Rule 9(b).

**3. Adequacy of Pleading "Pattern of Racketeering Activity."**

Defendants also contend that Plaintiff has failed to meet its burden of pleading a "pattern of racketeering activity" under RICO.

The RICO statute provides simply that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity. . . ." 18 U.S.C. § 1961(5). Beyond this, both the Second Circuit, in *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989), and the Supreme Court, in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), have examined the legislative history and relevant caselaw in an attempt to more precisely delineate the pleading requirements for adequately alleging a RICO "pattern."

Both *Indelicato* and *H.J. Inc.* rejected the notion, previously adopted by various district and circuit courts, that a "pattern" requires proof of multiple criminal schemes. Rather, those cases establish "that to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc., supra*, 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original); *see Indelicato, supra*, 865 F.2d at 1381–82.

In order to sufficiently plead the "relationship" prong of the "pattern" requirement, a RICO plaintiff must first allege that at least two acts of racketeering were committed. "These acts of racketeering must be related to each other such that they cannot be deemed to be isolated acts. . . . If these acts are proved to be related by means of similar motive, results, victims, participants or purposes, then the relationship prong is sufficiently established." *Amsler v. Corwin Petroleum Corp.*, 715 F.Supp. 103 (S.D.N.Y. 1989).

A RICO plaintiff must also establish continuity of the predicate acts, or that the acts constitute a threat of continuing activity. According to the Supreme Court:

Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc., supra*, 492 U.S. at 241–42, 109 S.Ct. at 2902 (citation omitted).

Acts may constitute a pattern even though they occur in close temporal proximity, or even simultaneously, "[i]f there are similarities between them with respect to victim, methodology, goal, *etc.*, and if there is evidence of a threat of continuation of racketeering activity. . . ." *Indelicato, supra*, 865 F.2d at 1383. However, the Second Circuit disapproved of attempts by private plaintiffs "to go beyond Congress's intent and fragment an act that plainly is unitary into multiple acts in order to invoke RICO. . . ." *Id.*

*Indelicato* also found it important to note that the "continuity plus relationship" analysis is not a determinative two-pronged test for the establishment of a RICO "pattern." Rather, a showing of continuity plus relationship is necessary to prevent the application

of RICO to the perpetrators of isolated or sporadic criminal acts. *Id.* (quoting *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 192 (9th Cir.1987)).

 Applying these standards to Plaintiff's RICO cause of action in this case, the complaint fails to sufficiently allege a "pattern of racketeering activity." Even when construed in the light most favorable to Plaintiff, the complaint alleges at most one instance of mail fraud—*i.e.,* the transmittal of the purchase order for the baghouse work, which was issued on some indeterminate date in July, 1991. The other predicate acts are alleged to have occurred between September 2nd and 11th, 1991, consisting of no more than three unspecified "contacts" by McNamara whereby he represented that payment for the baghouse work was forthcoming. Based on the short time period during which these "contacts" are alleged to have occurred, the court will presume that they involved telephone calls, and will further presume (though not specifically alleged) that those calls involved interstate commerce so as to invoke the wire fraud statute.

However, when considered in the context of the circumstances alleged in the complaint, these "contacts" do not constitute separate and distinguishable multiple acts involving the use of the mails or wires to execute a fraudulent scheme. Instead, they constitute the unitary act of McNamara's promise to pay Plaintiff for the work it performed in accordance with the purchase order for the erection of the baghouse. This promise was reiterated on several occasions, but it remained a single promise which, it is alleged, was breached when Detroit Coke's anticipated funding fell through. Plaintiff's attempt to cast this unitary promise of payment as a series of separate but related predicate acts is precisely the type of "fragmentation" which Congress and the Second Circuit in *Indelicato* were concerned about.

Thus, this Court finds that Plaintiff has failed to meet even the threshold burden of pleading two or more predicate acts of racketeering. Additionally, even if Detroit Coke's issuance of the purchase order and McNamara's promises to pay could be considered to comprise more than one racketeering act,

the facts alleged fail to establish the type of continuing activity or threat of continuing activity necessary to establish a RICO "pattern." The most liberal construction of the complaint alleges a period of activity lasting approximately two months, from sometime in early July to no later than September 11, 1991. Closer scrutiny reveals that the alleged fraudulent activity—McNamara's promises of payment—actually took place between September 3 and 11, a period of just over one week.

The complaint seeks to impose RICO liability on Detroit Coke for obtaining goods and services from Plaintiff and other contractors without payment. Any threat of such activity ended when Detroit Coke ceased operations on September 12, 1991. Thus, Plaintiff has failed to allege that Defendants' activity extended over a substantial period of time or threatened repetition. In the absence of these elements, Plaintiff cannot meet the "continuity" requirement necessary to establish a "pattern of racketeering activity," and its RICO cause of action must fail. For this reason, leave to replead in order to correct the Rule 9(b) deficiencies discussed above should be denied.

Defendants have also asserted that the complaint fails to sufficiently allege other necessary elements of a RICO cause of action, such as the existence of an "enterprise" and injury from investment of income derived from racketeering activity. Defendants also ask the Court to rule the RICO statute void for vagueness under the Fourteenth Amendment. Because the discussion above provides ample grounds for dismissal of the federal court complaint, these additional issues will not be reached in this report and recommendation.

Based on the above, I recommend that the District Court dismiss the complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), without leave to replead, and remand the case to state court pursuant to 28 U.S.C. § 1447(c) for lack of original jurisdiction.

Respectfully submitted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

DATED: Buffalo, New York

December 16, 1992