**Patrick ARONS, et al., Plaintiff,**

v.

**James L. LALIME, et al., Defendants.**

**No. 94–CV–618A.**

United States District Court,
W.D. New York.

Jan. 21, 1998.

---

## ORDER

ARCARA, District Judge.

On August 26, 1994, plaintiffs filed the complaint in this action. This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on November 2, 1994.

On September 16, 1996, defendant Lalime filed a motion for summary judgment, but failed to file a Rule 56 statement as required by Local Rule 56. On August 20, 1996, defendant Harold Dingman filed a motion for summary judgment. On October 17, 1996, plaintiffs filed papers in opposition to defendant Lalime's motion for summary judgment and on October 21, 1996 plaintiffs filed papers in opposition to defendant Dingman's motion for summary judgment. On December 6, 1996, defendant Dingman also filed a motion for sanctions against plaintiffs under Rule 11 of the Federal Rules of Civil Procedure.

On March 11, 1997, Magistrate Judge Heckman filed a Report and Recommendation ("March 11, 1997 Report") recommending that defendant Lalime's motion for summary judgment be denied based upon his failure to comply with Local Rule 56. On March 24, 1997, the Magistrate Judge filed a Report and Recommendation and Order ("March 24, 1997 Report") recommending that defendant Dingman's motion for summary judgment be granted in part and denied in part and denying defendant Dingman's motion for Rule 11 sanctions.

On March 24, 1997, defendant Lalime filed objections to the Magistrate Judge's March 11, 1997 Report. On April 10, 1997, defendant Dingman filed objections to the Magistrate Judge's March 24, 1997 Report. Plaintiffs filed responses to both Lalime's and Dingman's objections on April 25, 1997. Oral argument on objections was held on December 2, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of

those portions of the Report and Recommendations to which objections have been made. Upon a *de novo* review of the Report and Recommendations, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the March 11, 1997 Report and the March 24, 1997 Report.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's March 11, 1997 Report, defendant Lalime's motion for summary judgment is denied. Likewise, for the reasons set forth in Magistrate Judge Heckman's March 24, 1997 Report, defendant Dingman's motion for summary judgment is granted in part and denied in part and defendant Dingman's motion for Rule 11 sanctions is denied.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

On February 27, 1997, oral argument was heard on defendant Dingman's motion for summary judgment. Decision was reserved.

Defendant Lalime has also moved for summary judgment but has failed to file a Rule 56 statement as required by Local Rule 56. Due to the complex nature of this RICO action, a Rule 56 Statement is particularly necessary in this case. Because defendant Lalime has failed to file the statement required by this rule, his motion for summary judgment should be denied.

Plaintiff has moved to strike the answer of defendant Miller and for default judgment as to defendant Miller. This motion is unopposed and will be taken under advisement by the court.

Plaintiff has moved to strike an expert witness affidavit. Responsive papers are due on **April 10, 1997**. Oral argument will be held on **Wednesday, May 1, 1997, at 2:00 p.m.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd.,* et al., 838 F.2d 55 (2d Cir.1988). The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

March 10, 1997

### REPORT AND RECOMMENDATION AND ORDER

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for all pretrial matters and to hear and report on dispositive motions. Defendant Harold

Dingman has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (**Item 77**) and for sanctions against plaintiffs pursuant to Fed.R.Civ .P. 11 (Item 101).[1] For the following reasons, it is recommended that Dingman's motion for summary judgment be granted in part and denied in part. Dingman's motion for Rule 11 sanctions is denied.

## BACKGROUND

On August 26, 1994 plaintiffs filed this action alleging that between April and October, 1993, defendants induced plaintiffs to invest their money in a fraudulent "serial transaction (roll) program" involving the purchase and sale of bank notes and securities, in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and various common law theories. More specifically, plaintiffs allege that between April and June of 1993 they transferred a total of $775,-317.00 to Centerpointe Capital Corp. ("Centerpointe"), a corporation established by Lalime and defendant David Miller to carry out the serial transaction program. These funds were deposited into an attorney trust account maintained by Dingman, as Centerpointe's attorney, at NationsBank of Virginia.[2] Plaintiffs allege that instead of using the solicited funds to buy and sell discounted bank notes and securities as promised, Miller, Dingman, Lalime and the other defendants used the funds for their own personal gain.

1. On September 16, 1996, defendant Lalime filed a motion for summary judgment (**Item 84**). On March 10, 1997, this court recommended that Lalime's motion be denied for failure to file a Rule 56 statement as required by Local Rule 56 (*see* Item 106). In that same "Report and Recommendation and Order," the court also set a schedule for briefing and argument of plaintiff's motion to strike Dingman's expert disclosure (**Item 73**), and advised the parties of the pending status of plaintiff's motion to strike defendant Miller's answer and for default judgment against Miler (**Item 72**).

2. NationsBank was originally named as a defendant in the complaint based on its alleged participation in the securities purchasing scheme through its officer and employee Colin H. Gillespie. NationsBank moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the complaint against

After discovery, and after litigation of several disputes that arose between counsel during the course of discovery, Dingman moved for summary judgment pursuant to Rule 56 (*see* Items 77–79). Dingman claims that he was retained by Miller in early 1993 to provide legal services to Centerpointe in connection with certain proposed real estate transactions. According to Dingman, he had no previous experience or knowledge in the area of securities transactions, he is not nor has he ever been an officer of Centerpointe and played no role in the operation or management of Centerpointe, and he had no communications of any kind with the plaintiffs prior to any of the transactions at issue. He contends that the proof fails in several respects to meet the requirements for establishing a violation of RICO or liability under any of the state law theories set forth in the complaint (*see generally* Item 79).

In response, plaintiffs have submitted extensive documentation in support of their contention that Dingman was directly involved in the serial transaction "scheme" and the Centerpointe "enterprise" (*see* Items 86–93). According to plaintiffs, these submissions establish that there are genuine issues of material fact precluding summary judgment in favor of Dingman.

Oral argument was heard by the undersigned on February 27, 1997. For the reasons that follow, it is recommended that Dingman's summary judgment motion be granted in part and denied in part.

it on the ground that it could not be found liable under RICO for merely providing banking services to Dingman. Subsequently, counsel agreed to dismissal of the complaint against Nations-Bank without prejudice subject to the results of limited discovery in the form of document demands and the depositions of Mr. Gillespie and one other NationsBank representative. What followed was a series of motions, hearings and *determinations by this court, objections to which* are still pending before Judge Arcara. The factual, procedural and legal background for those motions is addressed at length in the decisions and orders pertaining thereto, and will not be repeated herein except as necessary to the court's determination of the issues raised by the summary judgment motions subject to this report and recommendation.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Coach Leatherware Co., Inc. v. Ann-Taylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir. 1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, supra* at 167.

As stated by the Second Circuit:

[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994). In this case, the substantive law is the RICO statute.

### II. RICO.

▆▆▆ In order to plead and prove a civil claim for damages under RICO, a plaintiff faces two distinct burdens. First, it must allege and show that the defendants violated the substantive RICO statute,[3] commonly known as "criminal RICO." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). The plaintiff must show the following constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invested in, or maintained an interest in, or participated in (6) an "enterprise" (7) the activities of which affected interstate or foreign commerce. *Id.* (citing 18 U.S.C. § 1962(a)-(c)); *see also Maussner v. McCormick*, 653 F.Supp. 131, 133 (W.D.N.Y.1986).

If the plaintiff adequately demonstrates a § 1962 violation, it then must meet its second burden—*i.e.*, invoking RICO's civil remedies of treble damages, attorneys fees and costs. To satisfy this burden, the plaintiff must show that it was "injured in [its] business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c) (emphasis added); *Moss v. Morgan Stanley, supra* at 17.

Dingman contends that he is entitled to summary judgment on the RICO claims against him in this case because the proof fails to demonstrate the following:

(A) that Dingman participated in the operation or management of the Centerpointe "enterprise" (Item 79, pp. 17–22);

(B) that plaintiffs relied to their detriment on any representations made by Dingman (*id.*, pp. 22–25);

(C) that Dingman committed any RICO predicate acts;

(D) that Dingman was involved in any continuing criminal conduct consti-

---

**3.** 18 U.S.C. § 1962 provides in relevant part as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

tuting a RICO "pattern" (*id.,* pp. 28–34);

(E) the existence of a RICO conspiracy (*id.,* pp. 35–36); and,

(F) the requirements for mail and wire fraud (*id.,* pp. 36–41).

Each of these grounds is discussed in turn below.

## A. Participation in the Enterprise.

Under the previously settled law of the Second Circuit, a plaintiff could successfully establish conduct or participation in the conduct of the affairs of an enterprise under 18 U.S.C. § 1962(c) in either of two ways: (1) by showing that the defendant was able to commit the predicate offenses solely by virtue of his or her position in the enterprise or control over the affairs of the enterprise, or (2) by showing that the predicate offenses were related to the activities of the enterprise. *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *see also United States v. Robilotto,* 828 F.2d 940, 947–48 (2d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988). More recently, however, the Circuit adopted the Supreme Court's holding in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), applying a narrower test "to gauge whether a defendant had a sufficient connection to the enterprise to warrant imposing liability under § 1962(c)." *United States v. Viola,* 35 F.3d 37, 40 (2d Cir.1994), *cert. denied,* 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *see also Napoli v. United States,* 32 F.3d 31, 34–35 (2d Cir.1994),*cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

■ Now, under *Reves,* in order to be subject to § 1962(c) liability, a defendant "must participate in the operation or management of the enterprise itself." *Reves, supra,* 507 U.S. at 185. Thus, the plaintiff must plead and prove at a minimum that the defendant was associated with the enterprise and had "*some* part in directing" the affairs of the enterprise. *Reves, supra,* 507 U.S. at 179 (emphasis in original); *see also United States v. Viola, supra,* 35 F.3d at 40; *Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209, 220 (S.D.N.Y.1993). In other words, in order to prove a violation of § 1962(c), the plaintiff must establish more than mere association with the enterprise or relatedness of the predicate acts to the affairs of the enterprise. The plaintiff must show that the defendant exercised at least some degree of control over the affairs of the enterprise. *Amalgamated Bank, supra* at 220–21.

■ In addition, providing legal advice and legal services generally does not constitute participation in the operation or management of an enterprise sufficient to ground an allegation of a violation of § 1962(c). *Morin v. Trupin,* 835 F.Supp. 126, 135 (S.D.N.Y. 1993); *see also Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir.1993) (attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in "operation or management"); *University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993) ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); *Sassoon v. Altgelt, 777 Inc.,* 822 F.Supp. 1303 (N.D.Ill.1993)(attorneys' provision of legal services to general partners and limited partnership did not constitute operation or management of enterprise that would support liability under Section 1962(c)); *Gilmore v. Berg,* 820 F.Supp. 179, 183 (D.N.J.1993)(attorney who prepared false limited partnership documents not liable under Section 1962(c)).

In this case, the primary proof relied on by plaintiffs to impose RICO liability on Dingman is a document entitled "Contract" (Item 93, Ex. 33).[4] This document was signed by

---

4. Item 93 is plaintiffs' attorney affidavit in opposition to Dingman's motion for summary Judgment. Item 86 is plaintiffs' attorney affidavit in opposition to Lalime's motion for summary judgment. The exhibits referred to in these affidavits and in this report and recommendation have been submitted by plaintiffs as a separate document in three volumes, and are numbered consecutively from 1 through 223. They are referred to herein interchangeably as exhibits to either Item 86 or 93.

Dingman on April 12, 1993, and by defendants Miller, McKernan, Polishuk and Schwartze–Berenguer (with no corresponding dates). It provided for the establishment of a "roll program" in Dingman's Nations-Bank attorney trust account, with Miller and McKernan as managers of the program and with Scwartze–Berenguer (on behalf of defendant Two Headed Eagle, Inc.) and Polishuk (on behalf of defendant Multinational, Ltd.) as representatives of "investors to the program from Europe" (*id.*). The contract described the procedure for wiring the investors' funds to the Dingman account, "to be used for the roll program to purchase credit lines to enable purchase of bank securities" (*id.*). The contract further provided for the following distribution of "financial benefits:"

| | | |
|---|---|---|
| 1. | Attorney Harold W. Dingman | 5% |
| 2. | David Miller | 10% |
| 3. | Dr. James McKernan | 10% |
| 4. | Investors | 50% |
| 5. | Mutinational & Two Headed Eagle | 25% |

(*id.*). The contract further obligated Dingman "to insure bank confirmation of all incoming funds to be established and wired out" (*id.*).

■ This document alone is sufficient to raise factual issues as to the extent of Dingman's participation in the "roll program," the very program that is alleged by plaintiffs to be the operative scheme of the RICO enterprise in this case. For example, there is nothing in the language of the contract to suggest that Dingman's 5% share of the "financial benefits" of the roll program was intended as compensation only for the performance of legal services for Miller. Indeed, the record suggests that Dingman disbursed $40,000 to himself from the NationsBank attorney trust account between April and July of 1993 (*see* Item 93, Ex. 49), yet the only time sheet produced by Dingman during discovery reflects that Dingman spent about 8½ hours on legal work for Miller between May 26, 1993 and June 7, 1993 (*id.*, Ex. 42).

Based on this proof, this court cannot find as a matter of law that Dingman did not sufficiently participate in the operation or management of the enterprise to impose RICO liability on Dingman under *Reves v. Ernst & Young.*

**B. Detrimental Reliance as an Element of Fraud.**

■ Dingman contends that there is no proof that he directly communicated with any of the plaintiffs prior to the transfers of funds at issue, and that plaintiffs therefore cannot demonstrate the elements of mail or wire fraud as RICO predicate acts. In order to prove mail or wire fraud as predicate acts in a civil RICO case, the plaintiff must show reliance on fraudulent misrepresentations of the defendant, and that the reliance was the cause of the injury suffered by the plaintiff. *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.,* 909 F.Supp. 162, 170 (S.D.N.Y.1995)(citing *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993)); *see also County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576 (S.D.N.Y.1995). Although detrimental reliance is not an element of mail or wire fraud claims generally, a plaintiff seeking to base RICO liability on these predicate acts must prove that its injuries are the result of reliance on the fraud. *THC Holdings Corp. v. Tishman,* 1996 WL 291881, at *4 (S.D.N.Y.1996)(citing *Metromedia Co. v. Fugazy, supra*).

■ In this case, the record shows that prior to the transfers of plaintiffs' funds at issue, the plaintiffs were advised by Berenguer; Polishuk, or other individuals associated with Two Headed Eagle or Multinational that the funds would be deposited in Dingman's NationsBank attorney trust account, as provided in the April 12, 1993 contract referred to above, "for the sole purpose of participating in the 'Roll Program'" (April 15, 1993 "Contrat" between Berenguer and Arons, Item 93, Ex. 77). This proof is sufficient to create genuine issues of material fact as to whether plaintiffs relied on representations contained in the April 12, 1993 contract and/or the April 15, 1993 "Contrat," whether those representations were fraudulent, and whether plaintiffs suffered harm as a result—*i.e.,* whether, as plaintiffs claim, their funds were not invested but were instead converted by defendants, including Dingman.

*See, e.g., Sterling Interiors Group, Inc. v. Haworth,* 1996 WL 537482, a *3–4 (S.D.N.Y. September 23, 1996).

## C. Other Predicate Acts.

 Dingman contends that the state law provisions relied upon by plaintiffs in their complaint (*see* Item 1, ¶ 43) do not constitute RICO predicate acts. However, Dingman concedes in his papers that certain elements of the state criminal fraud and larceny provisions cited by plaintiffs "fall within the purview of" predicate acts listed at 18 U.S.C. § 1961(1)(A). *United States v. Private Sanitation Industry Ass'n,* 793 F.Supp. 1114, 1129 (E.D.N.Y.1992); *see also Seale v. Miller,* 698 F.Supp. 883, 898 (N.D.Ga. 1988)("[S]ince a genuine issue remains as to plaintiff's ... state law fraud claims, and because plaintiff has produced evidence that in committing this alleged fraud defendants utilized the mail and wires, plaintiff has demonstrated sufficient predicate acts to maintain his federal RICO claim.") (*see* Item 79, pp. 25–27).

Accordingly, genuine issues of material fact remain as to whether Dingman's conduct violated state law, and whether that conduct constitutes "racketeering activity" under § 1961(1)(A).

## D. RICO "Pattern."

Dingman and Lalime contend that the undisputed proof in the case fails to establish a "pattern of racketeering activity," as that term is defined in the RICO statute and interpreted in the caselaw.

The RICO statute provides simply that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity ...." 18 U.S.C. § 1961(5). Beyond this, both the Second Circuit, in *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989), and the Supreme Court, in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), have examined the legislative history and relevant caselaw in an attempt to more precisely delineate the requirements for adequately pleading and proving a RICO "pattern."

 Both *Indelicato* and *H.J. Inc.* rejected the notion, previously adopted by various district and circuit courts, that a "pattern" requires proof of multiple criminal schemes. Rather, those cases establish "that to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc., supra,* 492 U.S. at 239 (emphasis in original); *see Indelicato, supra,* 865 F.2d at 1381–82.

In order to demonstrate the "relationship" prong of the "pattern" requirement, a RICO plaintiff must first show that at least two acts of racketeering were committed. "These acts of racketeering must be related to each other such that they cannot be deemed to be isolated acts.... If these acts are proved to be related by means of similar motive, results, victims, participants or purposes, then the relationship prong is sufficiently established." *Amsler v. Corwin Petroleum Corp.,* 715 F.Supp. 103 (S.D.N.Y.1989). According to the Second Circuit:

> An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions.

*Indelicato, supra,* 865 F.2d at 1382.

 A RICO plaintiff must also establish continuity of the predicate acts, or that the acts constitute a threat of continuing activity. According to the Supreme Court:

> Continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening ɳo future criminal con-

duct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc., supra,* 492 U.S. at 241–42 (citation omitted).

In measuring whether the closed-ended continuity requirement is satisfied in a particular case, courts have weighed a variety of non-dispositive factors, including the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes. *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463 (2d Cir. 1995), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996)(citing *Vicom v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 780 (7th Cir.1994); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1412–13 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Polycast Technology Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 948 (S.D.N.Y.1989)). Thus, in *GICC Capital Corp,* the court examined the plaintiff's claim that it was fraudulently induced to accept a promissory note from the defendant by means of a scheme to deplete the defendant's corporate assets. The court found that the specific racketeering activities alleged in the case occurred over a period of less than one year and carried no threat of future criminal activity, and therefore did not constitute the sort of "long-term criminal conduct" that Congress sought to target in RICO. *GICC Capital Corp., supra,* 67 F.3d at 468–69.

In this case, the underlying predicate acts of fraud against plaintiffs are alleged to have begun in early April, 1993, when McKernan sent a letter to Polishuk describing the roll program (Item 1, ¶ 31(A)). The predicate acts are alleged to have continued until early November, 1993, when Miller faxed a memo to Berenguer in which "reconciliation" and "settlement" with the investors was discussed (*id.,* ¶ 31(BB)). However, plaintiffs contend in their motion papers that the duration of the scheme should be measured from December, 1991, when Lalime and McKernan first began to correspond about the use of Lalime's attorney trust account (*see, e.g.,*

Item 86, Ex. 161), through at least April of 1995 (*see id.,* Ex. 220). Plaintiffs also contend that the continuity of the scheme should be measured in terms of the various versions of the serial transaction program offered to third parties such as IBG Enterprises (*see id.,* Exs. 172–177), Coran Holding (*id.,* Ex. 70), Celine Investments (*id.,* Ex. 71), Walter Didicher (*id.,* Ex. 72), and Rolf Schneider (*id.,* Ex. 73).

■ Based on this court's review of the record in light of the legal standards set forth in the cases cited above, I find that genuine issues of fact remain as to whether the defendants engaged in a pattern of racketeering activity. The record establishes that several transactions and communications regarding the roll transaction program took place by wire and mail over a substantial period of time. Whether two or more of those transactions or communications are sufficiently related to each other and constitute a threat of continuing criminal activity so as to amount to a RICO pattern are factual issues for the jury.

## E. Conspiracy.

■ 18 U.S.C. § 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." In order to show a conspiracy under § 1962(d), plaintiffs must demonstrate that there was an "agreement involving each of the defendants to commit at least two predicate acts ...," *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990), and that each of the defendants "understood the scope of the enterprise and knowingly agreed to further its affairs" through the commission of the predicate acts. *Connolly v. Havens,* 763 F.Supp. 6, 14 (S.D.N.Y.1991); *see also Industrial Bank of Latvia, supra,* 1994 WL 286162 at *4.

Because factual issues remain as to whether plaintiffs have established violations of § 1962(a), (b), or (c), Dingman's motion for summary judgment on plaintiffs' § 1962(d) claim should be denied as well.

## F. Failure to Adequately Plead Mail or Wire Fraud.

When using the mail fraud and wire fraud statutes as the basis of the alleged predicate acts of racketeering, the RICO plaintiff must meet the pleading requirements of Fed. R.Civ.P. 9(b). 18 U.S.C. § 1961(1); *see Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *W.E. Darin Construction Enterprises, Inc. v. Detroit Coke Co.*, 814 F.Supp. 325, 329–30 (W.D.N.Y.1993); *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244, 248 (S.D.N.Y.1986). Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

To satisfy Rule 9(b), a RICO complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *see Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992–93 (7th Cir.1991) (RICO plaintiffs, like all parties pleading fraud in federal court, must state the time, place and content of the alleged communications perpetrating the fraud; mere references to plans and schemes are too conclusory to satisfy Rule 9(b)). While knowledge of the fraud or intent to defraud on the part of the defendant may be averred generally, Rule 9(b) also requires such allegations of "scienter" to be supported by facts giving rise to a strong inference that defendant knew the statements to be false and intended to defraud plaintiff. *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990); *Beck, supra*, 820 F.2d at 50; *Finkel v. Stratton Corp.*, 754 F.Supp. 318, 328 (S.D.N.Y.1990).

In addition, the federal mail and wire fraud statutes require a showing of intentional fraud, or "reckless indifference to the truth." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990); *Beck, supra*, 820 F.2d at 49; *United States v. Von Barta*, 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). Acts done inadvertently, or in good faith without intent to defraud, do not satisfy the requisite "knowledge and criminal intent" elements of the mail and wire fraud statutes. *O'Malley, supra*, 896 F.2d at 706 (quoting *United States v. Sheiner*, 273 F.Supp. 977, 983 (S.D.N.Y.1967), *aff'd*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969)).

I find that plaintiffs have met these requirements in this case. Plaintiffs allege that they were induced to transfer their money to Dingman's trust account by representations made by specific defendants about the viability of the roll transaction program. Plaintiffs also allege that defendants knew such representations were false, as evidenced by their conversion rather than investment of plaintiffs' funds. These allegations are sufficient to plead mail and wire fraud as RICO predicate acts in this case.

## III. State Law Claims.

Defendants Dingman and Lalime also move for summary judgment dismissing plaintiffs' state law claims for breach of fiduciary duty, professional malpractice, conspiracy, conversion and fraud. Defendants first argue that upon granting summary judgment dismissing the federal RICO claims, the court should decline to exercise supplemental jurisdiction over the state law claims. Because this court recommends denying defendants' summary judgment motions as to plaintiffs' federal RICO claims, this reason for dismissal of the state law claims is rejected as well. The court now turns to the individual state law claims.

### A. Breach of Fiduciary Duty.

Dingman moves for summary judgment on the ground that plaintiffs' breach of fiduciary duty claim is time-barred. In determining whether a claim in a diversity case is time-barred, the federal court applies whatever statute of limitation the courts of

the forum state would apply. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); 2 Moore's Federal Practice § 3.08 [1], at 3–41. Under *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), New York's current choice-of-law rules require the court to consider the following three elements: the domicile of the plaintiff, the domicile of the defendant, and the place where the injury occurred. *Bonerb v. Richard J. Caron Foundation,* 159 F.R.D. 16, 18 (W.D.N.Y. 1994); *Datskow v. Teledyne Continental Motors,* 807 F.Supp. 941, 943 (W.D.N.Y.1992). "When more than one of these is located in the same state, that state's law should ordinarily control." *Datskow, supra; see also Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) ("controlling law" includes state's statute of limitations).

In this case, the parties do not vigorously dispute that the law of Virginia—*i.e.,* the situs of Dingman's attorney trust account— applies to the state law claims. Nor is it contested as to whether Virginia's one-year statute of limitations [5] should apply to the case. Instead, plaintiffs contend that the claim against Dingman is timely because it was brought within one year from the date that Dingman gave notice of his renunciation of the "Contrat" (*see* Item 86, Ex. 135).

 Virginia law provides some guidance as to when a cause of action accrues, as follows:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered . . . .

Va.Code Ann. § 8.01–230 (1996). Unfortunately, the cases have not been uniform in their application of this language to claims for breach of fiduciary duty in Virginia. *Compare RTC v. Everhart,* 37 F.3d 151, 155

(4th Cir.1994) (claims of negligence and breach of fiduciary duty against former officers and directors of bank accrued when the conduct occurred), *with RTC v. Walde,* 856 F.Supp. 281, 285 (E.D.Va.1994) (claims of breach of fiduciary duty and negligence accrued when the injury was sustained). This issue, combined with issues of fact as to exactly when the actionable conduct occurred and when the injury was sustained in this case, strongly suggests that summary judgment is not appropriate on the ground of the timeliness of plaintiffs' breach of fiduciary duty claim against Dingman.

### B. Professional Malpractice.

 To sustain a claim for legal malpractice under Virginia law, the plaintiff must plead and prove that an attorney-client relationship existed between the plaintiff and the defendant which gave rise to a duty, that the defendant neglected or breached that duty, and that the neglect or breach was a proximate cause of the claimed damages. *Gregory v. Hawkins,* 251 Va. 471, 468 S.E.2d 891, 893 (1996); *Allied Productions v. Duesterdick,* 217 Va. 763, 232 S.E.2d 774, 775 (1977). The existence of an attorney-client relationship is essential to establishing a claim of legal malpractice, and requires some indication that the advice and assistance of the attorney was sought and received. *Carstensen v. Chrisland Corp.,* 247 Va. 433, 442 S.E.2d 660, 668 (1994); *Nicholson v. Shockey,* 192 Va. 270, 64 S.E.2d 813, 817 (1951). Mere deposit of funds into an attorney's escrow or trust account is not sufficient to establish the requisite attorney-client relationship. *See Winslow, Inc. v. Scaife,* 219 Va. 997, 254 S.E.2d 58, 59–60 (1979); *see also DeLeo v. Cohen,* 1990 WL 271119 (Conn.Super. May 14, 1990); *Copalcor Mfg. Ltd. v. Meteor Industries Inc.,* 1988 WL 52194 (E.D.N.Y. May 16, 1933).

 Plaintiffs have failed in this case to demonstrate the existence of an attorney-client relationship with Dingman. Nothing in the April 12, 1993 contract or the April 15,

---

**5.** § 8.01–248 of the Virginia Code, in effect when this case was brought in August of 1994, provided:

Every personal action . . . for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued.

1993 "Contrat," or in the extensive record before the court, suggests that plaintiffs sought or that Dingman provided legal services beyond the escrow or trust account. The proof in the case is therefore insufficient as a matter of law to establish legal malpractice against Dingman.

Accordingly, Dingman's summary judgment motion should be granted to the extent that it seeks dismissal of the legal malpractice claim against him.

## C. Conspiracy.

■ A common law conspiracy in Virginia consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means. *Commercial Business Systems, Inc. v. BellSouth Services, Inc.*, 249 Va. 39, 453 S.E.2d 261, 267 (1995); *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 337 S.E.2d 744, 748 (1985). In this case, as discussed above with respect to the RICO conspiracy claims, genuine factual issues exist precluding summary judgment in Dingman's favor on plaintiffs' common law conspiracy claim.

## D. Conversion.

■ Under Virginia law, an allegation of the tort of conversion asserts a "wrongful exercise or assumption of authority ... over another's goods, depriving him [or her] of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Hairston Motor Co. v. Newsome*, 253 Va. 129, 480 S.E.2d 741, 744 (1997)(quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956)). In this case, there are material issues of fact as to whether Dingman exercised authority over plaintiffs' funds and deprived them of possession by distributing those funds rather than investing them.

Accordingly, Dingman's motion for summary judgment should be denied to the extent it seeks dismissal of plaintiffs' conversion claim.

## E. Fraud.

Defendants claim that plaintiffs' common law fraud claim fails to meet the pleading requirements of Fed.R.Civ.P. 9(b). As discussed above with respect to plaintiffs' wire and mail fraud claims, plaintiffs have met the fraud pleading requirements sufficient to withstand Dingman's summary judgment motion.

## IV. Dingman's Motion for Rule 11 Sanctions.

■ This motion is denied. As the discussion herein demonstrates, plaintiffs have satisfied this court that the claims in the complaint "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law ...," Fed.R.Civ.P. 11(b)(2), and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation ...." Fed.R.Civ.P. 11(b)(3). In addition, Dingman's motion papers contain no indication of compliance with the procedural requirements of Rule 11(c)(1)(A).

## CONCLUSION

For the foregoing reasons, it is recommended that the summary judgment motion of defendant Dingman (**Item 77**) be granted to the extent that it seeks dismissal of plaintiffs' legal malpractice claim, and denied in all other respects. Dingman's motion for Rule 11 sanctions (**Item 101**) is denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could

have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.***

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

March 21, 1997.